[No. A040911. First Dist., Div. One. Oct. 12, 1989.]

AMERICAN ACADEMY OF PEDIATRICS et al., Plaintiffs and Respondents, v.
JOHN K. VAN DE KAMP, as Attorney General, etc., et al., Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, Charlton G. Holland, Assistant Attorney General, and Elisabeth C. Brandt, Deputy Attorney General, for Defendants and Appellants.

Priest, Gaffaney & Teal, Cyrus Zal, Clarke D. Forsythe, Kevin J. Todd, Lynn D. Wardle, James M. Braden, Samuel B. Casey, Dennis Harvey and Ann-Louise Lohr as Amici Curiae on behalf of Defendants and Appellants.

Linda E. Shostak, Annette P. Carnegie, George C. Aguilar, Morrison & Foerster, Abigail English, Margaret C. Crosby and Carol Sobel for Plaintiffs and Respondents.

Geraldine Jaffe, Lorraine L. Loder, Pearl Lattaker, Susan Formaker, Mona Ehrenreich, Farella, Braun & Martel and Ann G. Daniels as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

## STEIN, J.—

### INTRODUCTION

The issue before this court today is not the morality or immorality of abortion. "The morality of abortion is not a legal or constitutional issue; it is a matter of philosophy, of ethics, and of theology. It is a subject upon which reasonable people can, and do, adhere to vastly divergent convictions and principles." (*Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, 284 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118].) Nor is the issue before this court today whether women have the right to procreative choice. That issue is settled. (*People* v. *Belous* (1969) 71 Cal.2d 954 [80 Cal.Rptr. 354, 458 P.2d 194]; *Roe* v. *Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705].) ■ The right to procreative choice in California is protected by article I, section 1 of our Constitution and extends to all women regardless of wealth (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 262) or age (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 880-881 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]). Nor are we required to decide today whether this right can be restricted where the pregnant woman is an unemancipated minor.

Today we decide the only issue before us: whether the superior court abused its discretion when it granted a preliminary injunction preventing the implementation of Assembly Bill No. 2274 (1987-1988 Reg. Sess.). We hold it did not and return the matter to that court for further proceedings.

### BACKGROUND

Prior to 1987, section 34.5 of the Civil Code allowed an unmarried minor to consent to the furnishing of care related to prevention or treatment of pregnancy. The consent of the minor's parent was not necessary in order to authorize such care, and an abortion under the Therapeutic Abortion Act was held to be " 'care' of the prospective mother 'related to her pregnancy.' " (*Ballard* v. *Anderson, supra,* 4 Cal.3d at p. 879.) In 1987 the Legislature passed Assembly Bill No. 2274 (Stats. 1987, ch. 1237) which, in essence, prohibits therapeutic abortions on unemancipated minors unless they

have obtained the consent of a parent, a guardian, or the juvenile court. Under the new statute the juvenile court must determine if the minor is sufficiently mature to make the decision to undergo a therapeutic abortion. If so, the court must give its consent. If not, the court must consider whether performance of the abortion will be in the best interests of the minor and must give or withhold its consent upon that basis. The bill makes it a misdemeanor for any person to knowingly perform an abortion on an unemancipated minor who has not obtained parental consent or undergone the outlined judicial process.

Plaintiffs, health care providers who challenge the constitutionality of Assembly Bill No. 2274, obtained a preliminary injunction against its implementation until the issue could be determined on the merits. The Attorney General, on behalf of the State of California, appeals from the order issuing the preliminary injunction. In addition to the briefs of the parties, numerous briefs have been filed by amici curiae. We shall address the issues relevant to the trial court's order, whether they were raised by the parties or the amici.

## STANDARD OF REVIEW

The issue presented is straightforward. It is not whether Assembly Bill No. 2274 is unconstitutional—that determination must await a trial on the merits—but whether the superior court abused its discretion in granting the preliminary injunction. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) ▉ "A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' [And] the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion." (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].)

▉ In deciding whether to issue a preliminary injunction, a trial court must review two interrelated factors: " 'The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]' . . . ' "[By] balancing the respective equities of the parties, [the trial court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him." ' [Citation.]" (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 286.)

▉ The Attorney General correctly contends that we must reverse the order granting the injunction if we determine that either of the two interre-

lated factors does not support the superior court's order. This contention appears to be in conflict with the language of *King* v. *Meese* (1987) 43 Cal.3d 1217, at page 1227 [240 Cal.Rptr. 829, 743 P.2d 889], to the effect that "a trial court's order with regard to a preliminary injunction may be affirmed if *either* the balance-of-hardships analysis or plaintiffs' likelihood of success considerations would alone support the ruling. [Citation.]" (Italics added.) As the Attorney General correctly notes, however, the order appealed from in *King* was an order denying a preliminary injunction. The correct rule is that an injunction should not issue where there is no possibility of success even though its issuance might prevent irreparable harm ("[T]here is no justification in delaying that harm where, although irreparable, it is also inevitable." (*Jessen* v. *Keystone Savings & Loan Assn.* (1983) 142 Cal.App.3d 454, 459 [191 Cal.Rptr. 104])). Where there is indeed no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only cause needless harm.

We do not find a "clear showing" that the superior court abused its discretion in determining *either* relevant consideration.

## THE BALANCE OF HARDSHIPS

Both sides produced extensive evidence before the superior court on the nature and extent of harm they would suffer. Plaintiffs introduced evidence that the implementation of the law would cause irreparable harm. Evidence produced by the Attorney General indicated the harm that would result if the new law was not immediately implemented. The plaintiffs also offered evidence indicating that the harm suggested by the Attorney General's evidence either was unfounded, or would not be alleviated by the new law.

■ "In determining the validity of the injunction, we look at the evidence presented to the trial court to determine if there was substantial support for the trial court's determination that the plaintiff was entitled to the relief granted. If there is, then the trial court properly exercised its discretion. Where the evidence is conflicting, we do not reweigh it . . . In short, the scope of our review is the same as in the case of any other judgment or order. [Citations.]" (*Monogram Industries, Inc.* v. *Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 703 [134 Cal.Rptr. 714].) "Where the evidence with respect to the right to a preliminary injunction is conflicting, the reviewing court must 'interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.' [Citation.]" (*Gleaves* v. *Waters* (1985) 175 Cal.App.3d 413, 416-417 [220 Cal.Rptr. 621].)

■ In the present case, the trial court's determination that greater harm would result from implementing the law than retaining the status quo was

supported by substantial evidence. Arguments which reweigh the evidence before the superior court are irrelevant. Where, as here, there is evidence which supports the trial court's determination, it is of no import that there is evidence which conflicts with it.

## THE PLAINTIFF'S LIKELIHOOD OF PREVAILING ON THE MERITS

*Applicability of Federal Decisional Law*

■ Plaintiffs rest their case on the California Constitution which, unlike the federal Constitution, expressly recognizes a right to privacy (art. I, § 1), which is broader than the federal right to privacy. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 263; *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].)

■ The state Constitution is a document of *independent* force, and the rights defined therein are not mirror images of their federal counterparts. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 261; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 551 [119 Cal.Rptr. 315, 531 P.2d 1099].) It is to be construed by our courts " 'informed but untrammeled by the United States Supreme Court's reading of parallel federal provisions. [Citations.]' " (*Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 525 [134 Cal.Rptr. 774, 557 P.2d 65].)

" '[I]n the area of fundamental civil liberties—which includes . . . all protections of the California Declaration of Rights—we sit . . . subject only to the qualification that our interpretations may not restrict the guarantees accorded the national citizenry under the federal charter. In such constitutional adjudication, our first referent is California law and the full panoply of rights Californians have come to expect as their due. Accordingly, decisions of the United States Supreme Court defining fundamental civil rights are persuasive authority to be afforded respectful consideration, but are to be followed by California courts only when they provide no less individual protection than is guaranteed by California law.' We have consistently adhered to the foregoing rule of interpretation and in our nation's system of federalism it is as fundamental a principle of constitutional law as that which rests ultimate authority for interpretation of the federal Constitution in the United States Supreme Court." (*People* v. *Hannon* (1977) 19 Cal.3d 588, 606 [138 Cal.Rptr. 885, 564 P.2d 1203].)

Amicus curiae contends that the scope of the right of privacy guaranteed by the California Constitution is to be determined in accordance with the definition of the scope of the federal right; specifically, as the federal right

was defined by the court in *Bellotti* v. *Baird* (1979) 443 U.S. 622 [61 L.Ed.2d 797, 99 S.Ct. 3035] (*Bellotti II*).[1] Amicus relies on *People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753] for the proposition that in interpreting the right of privacy guaranteed by California's Constitution, we are bound by *Bellotti II* unless this case comes within one of four specifically defined situations. We do not read *Teresinski* as requiring the adoption of federal decisional law in interpreting rights guaranteed by California's Constitution in all but the situations mentioned.[2]

*Teresinski* involved the legality of a detention. The federal (4th Amend.) and state (art. I, § 13) constitutional provisions at issue were virtually identical. Further, the issues involved were virtually indistinguishable from those in *United States* v. *Crews* (1980) 445 U.S. 463 [63 L.Ed.2d 537, 100 S.Ct. 1244]. Conversely, in this case we are dealing with one of the most fundamental rights, the right to privacy; a right specifically recognized in

---

[1] *Bellotti II* involved a parental consent statute enacted in Massachusetts. The United States Supreme Court, in striking down the statute in part, made a number of findings potentially relevant to the present case:

i) Although the federal Constitution protects the rights of children, such that the right of privacy discussed in *Roe* v. *Wade, supra,* 410 U.S. 113 would apply to persons under the age of 18, the constitutional rights of children cannot be equated with those of adults for three reasons: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." (*Bellotti II* at pp. 634-639 [61 L.Ed.2d at pp. 807-811].)

ii) The balancing of the various interests required that, "if the State decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained. [¶] A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." (*Id.* at pp. 643-644 [61 L.Ed.2d at pp. 813-814], fns. omitted.)

iii) A court, finding that the minor was mature enough to make her own decision, must authorize her to act without parental consultation or consent and, that upon finding that she was immature, should authorize or decline to sanction the operation upon determining the minor's best interests. (*Id.* at pp. 646-648 [61 L.Ed.2d at pp. 815-816].)

iv) The mature minor's decision must be followed whether or not the court agrees with that decision. (*Id.* at pp. 649-650 [61 L.Ed.2d at p. 817].)

[2] As emphasized by amicus, the court in *Teresinski* held, "Decisions of the United States Supreme Court, nevertheless, are entitled to respectful consideration [citations] and ought to be followed unless persuasive reasons are presented for taking a different course. In the present case, no reasons arise to justify rejecting the teaching of the Supreme Court in *Crews*. [¶] First, nothing in the language or history of the California provision suggests that the issue before us should be resolved differently than under the federal Constitution.' . . . [¶] Second, this is not a case in which the hight court 'hands down a decision which limits rights established by earlier precedent in a manner inconsistent with the spirit of the earlier opinion. . . . [¶] Third, we have on occasion been influenced not to follow parallel federal decisions by the vigor of the dissenting opinions and the incisive academic criticism of those decisions. . . . [¶] Finally, the Supreme Court decision in *Crews*, if followed by the courts of this state, would not overturn established California doctrine affording greater rights to the defendant." (30 Cal.3d at pp. 836-837.)

the California Constitution but only implied by the First Amendment to the United States Constitution.

In *Teresinski* the California Supreme Court recognized its authority "to construe the California Constitution to provide protection beyond that afforded by parallel provisions of the federal document." (*People* v. *Teresinski, supra,* 30 Cal.3d at p. 827.) It also noted that "the 'state courts, in interpreting constitutional guarantees contained in the state constitutions, are *"independently responsible* for safeguarding the rights of their citizens." ' " (*Id.* at pp. 835-836.) Nevertheless, the court chose to adopt the reasoning in the federal case because it was "persuasive and consistent with past California decisions." (*Id.* at p. 827.) Our Supreme Court merely looked to those instances in which its previous decisions had departed from a federal analysis and, finding no precedent compelling a departure in that case, adopted a federal decision it found persuasive. Any other reading of *Teresinski* clashes with the principles of federalism discussed above.[3]

■ In addition, there are reasons for not viewing *Bellotti II* as a persuasive authority. First, the federal right of privacy, discussed in *Bellotti II,* while a fundamental right, is not set forth in the federal Constitution. Indeed, the right to privacy was added to California's Constitution in order to prevent government intrusion which, it was believed, was not otherwise preventable and thus was perceived, at that time, to be permitted under the federal Constitution. (*White* v. *Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222].) Since the time of its enactment, California's constitutional right to privacy has been recognized as being broader than the federal right. The greater breadth of the state-guaranteed right was confirmed in *White* v. *Davis, supra,* 13 Cal.3d at pages 774-775, *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d 123, 130, footnote 3, and *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d 252, 263. ("The federal right, we noted [in *City of Santa Barbara* v. *Adamson*] 'appears to be narrower than what the voters approved in 1972 when they added "privacy" to the California Constitution.' ") Also, and relevant to the third consideration discussed by the court in *Teresinski, supra,* four Supreme Court justices concurring in the decision to hold the Massachusetts statute unconstitutional, expressed serious concerns that the guidelines stated by the majority did not sufficiently protect the minors' right of privacy.[4]

---

[3] Our reading of *Teresinski* is confirmed by subsequent high court expression. In *People* v. *Houston* (1986) 42 Cal.3d 595, 609-610 [230 Cal.Rptr. 141, 724 P.2d 1166], the court held, "The high court's decisions defining fundamental rights and liberties are entitled to 'respectful consideration.' But they are to be followed in California 'only where they provide no less individual protection than is guaranteed by California law.' [Citation.]" (See also *People* v. *Mayoff* (1986) 42 Cal.3d 1302, 1312 [233 Cal.Rptr. 2, 729 P.2d 166].)

[4] "The constitutional right to make the abortion decision affords protection to both of the privacy interests recognized in this Court's cases: 'One is the individual interest in avoiding

In summary, we find that California law governs the rights at issue in the present case.

### The Minors' Right to Privacy[5]

■ California law has long recognized that the right to privacy extends to the decision whether to undergo childbirth. Even before the right of privacy was expressed in our Constitution, it was held to include a woman's "rights to life and to choose whether to bear children." (*People* v. *Belous, supra,* 71 Cal.2d at p. 963.) "The fundamental right of the woman to choose whether to bear children follows from the Supreme Court's and this court's repeated acknowledgement of a 'right of privacy' or 'liberty' in matters related to marriage, family, and sex." (*Ibid.*)

The right of privacy was confirmed and made broader when article I, section 1 of California's Constitution was amended in 1972 (reworded in 1974). Thus, in *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at page 284, the court held, "By virtue of the explicit protection afforded an individual's inalienable right of privacy by article I, section 1 of the California Constitution, however, the decision whether to bear a child or to have an abortion is so private and so intimate that each woman in this state—rich or poor—is guaranteed the constitutional right to make that decision *as an individual,* uncoerced by governmental intrusion. Because a woman's right to choose whether or not to bear a child is explicitly afforded this constitutional protection, in California the question of whether an individual woman should or should not terminate her pregnancy is not a matter that may be put to vote of the Legislature." The court further stated: "Closely related to this fundamental interest in life and health is the basic

disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.' [Citation.] It is inherent in the right to make the abortion decision that the right may be exercised without public scrutiny and in defiance of the contrary opinion of the sovereign or other third parties. In Massachusetts, however, every minor who cannot secure the consent of both her parents—which under *Danforth* [*Planned Parenthood of Missouri* v. *Danforth, supra,* 428 U.S. 52] cannot be an absolute prerequisite to an abortion—is required to secure the consent of the sovereign." (*Bellotti* v. *Baird, supra,* 443 U.S. at p. 655 [61 L.Ed.2d at pp. 820-821], Justice Stevens, conc.)

The concurring opinion also expressed concern that the need to commence a judicial proceeding would "impose a burden at least as great as, and probably greater than, that imposed on the minor child by the need to obtain the consent of a parent" (*id.* at p. 655 [61 L.Ed.2d at p. 821]), and that little guidance was provided to the court attempting to determine the best interests of the minor. (*Ibid.*)

[5] We will find that the plaintiffs made a prima facie showing that Assembly Bill No. 2274 will violate the right to privacy on issues of sex and reproduction. Plaintiffs additionally contend that the right of informational privacy, also guaranteed by article I, section 1, is violated by Assembly Bill No. 2274. We need not, and therefore do not, reach the questions of whether it is likely that the statute also violates the right of informational privacy and whether the procedures drafted by the Judicial Council are sufficient to protect that right.

recognition that, for a woman, the constitutional right of choice is essential to her ability to retain personal control over her own body. As Professor Tribe has observed: 'If a man is the involuntary source of a child—if he is forbidden, for example, to practice contraception—the violation of his personality is profound; the decision that one wants to engage in sexual intercourse but does not want to parent another human being may reflect the deepest of personal convictions. But if a woman is forced to bear a child—not simply to provide an ovum but to carry the child to term—the invasion is incalculably greater. . . . [I]t is difficult to imagine a clearer case of bodily intrusion, even if the original conception was in some sense voluntary.' (Tribe, American Constitutional Law (1977) § 15-10, p. 924.) . . . [¶] The Supreme Court has defined the woman's right to choose as an aspect of the privacy right in even more explicit terms: '[I]f the right of privacy means anything, it is the right of the *individual* . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.' (Original italics.) (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453 [31 L.Ed.2d 349, 362, 92 S.Ct. 1029].) This right of personal choice is central to a woman's control not only of her own body, but also to the control of her social role and personal destiny. . . . 'The implications of an unwanted child for a woman's education, employment opportunities and associational opportunities (often including marriage opportunities) are of enormous proportion.' (Karst, *The Freedom of Intimate Association* (1980) 89 Yale L.J. 624, 641, fn. 90.) [¶] Thus, the constitutional rights at issue here are clearly among the most intimate and fundamental of all constitutional rights." (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 274-275.)

The right of privacy, including the right to choose to have an abortion, may not be intruded upon absent a compelling state interest, and the benefits which flow from the state action must "manifestly outweigh" the burden placed on privacy rights. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 276, 280-282; *People* v. *Belous, supra,* 71 Cal.2d at p. 964; *White* v. *Davis, supra,* 13 Cal.3d at p. 775.)

The Attorney General, while conceding that minors have constitutional rights (*Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 278 [226 Cal.Rptr. 361]), argues that the "compelling state interest test" applies only to adult privacy rights, and that the right of the state to invade the privacy rights of a minor need be justified only by a "significant state interest." Under the Attorney General's analysis, the standard to be applied varies depending upon the *status* of the person involved; i.e, the special needs or vulnerability of the person justify the use of the lesser test. The argument arises in part from the federal rule that minors'

constitutional rights may be more easily invaded than may the rights of adults. (See fn. 4, *ante.*)

The Attorney General cites *Planned Parenthood Affiliates* v. *Van de Kamp, supra,* and *In re Roger S.* (1977) 19 Cal.3d 921 [141 Cal.Rptr. 298, 569 P.2d 1286], in support of his argument that the less stringent test should be used when the privacy interests of minors are at issue. Neither case, however, applied the significant state interest test, nor does either persuade us to apply it here. The court in *Planned Parenthood Affiliates* discussed the federal "significant state interest" test at some length; however, the court did not expressly adopt that test. Rather, it found that the Attorney General failed "to meet his burden of showing a significant state interest, much less a compelling one" supporting the burden to the privacy rights there at issue. (*Id.* at p. 279.) Nor do we read *In re Roger S., supra,* 19 Cal.3d 921, to hold that the state may burden a minor's rights upon a lesser showing than would justify a similar burden on the rights of an adult. *In re Roger S.* involved a minor's interest in liberty, which is also guaranteed by article I, section 1 of California's Constitution. That court, quoting exclusively from federal opinions, stated: " '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' " (*In re Roger S., supra,* 19 Cal.3d at p. 928.) The court, however, went on to hold, "It is settled that a minor is entitled to the protections of due process whenever the state itself initiates action, whether civil or quasi-criminal, to deprive a minor of his liberty." (*Ibid.*) Thus, that opinion simply recognizes that the special position and vulnerability of minors may justify legislation which would not be justified if it sought to regulate adults.

■ California's Constitution, however, does not distinguish between the right of privacy of adults and children; it provides that the right of privacy is guaranteed to "all persons." The court in *Ballard* v. *Anderson, supra,* 4 Cal.3d 873, recognized that the "compelling state interest" test applied to minors, noting at page 880, "A policy which would exclude therapeutic abortion from the class of pregnancy-related surgical care available to minors without parental consent would necessarily be based on some *compelling interest* of the parents or the state in preventing therapeutic abortions."[6] (Italics added.)

In keeping with the language of article I, section 1, we hold that the status of the person involved does not determine the test to be used. The test

---

[6] In *Rider* v. *Superior Court* (1988) 199 Cal.App.3d 278, 282-283 [244 Cal.Rptr. 770], the court found the compelling state interest test applicable to the privacy rights of a 14-year-old alleged rape victim. In *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143 [219 Cal.Rptr. 387, 707 P.2d 760], the compelling state interest test was applied to a developmentally disabled adult notwithstanding that the disability rendered her in need of greater protection than would be required by a similarly situated adult with no disability.

remains whether the burden on the privacy right is justified by a compelling state interest. The status of the person may be relevant, however, to the question of whether a particular state interest is in fact compelling. Thus, a compelling state interest may justify enacting a statute to afford minors special protections even though the same statute, if applied to adults, would not pass constitutional muster.

Having determined that the proper test is whether Assembly Bill No. 2274 is justified by a compelling state interest, the question before us is whether the superior court abused its discretion by finding that plaintiffs had demonstrated a likelihood that the People could not prove at trial: (1) that the interest asserted in support of Assembly Bill No. 2274 is compelling; (2) that Assembly Bill No. 2274 furthers that compelling interest; *and,* (3) that the interest could not be adequately protected by a more narrowly drawn regulation.

*Compelling State Interests: (i) The Protection of Minors*

In amending Civil Code section 34.5, "The Legislature finds as follows: (a) the medical, emotional, and psychological consequences of an abortion are serious and can be lasting, particularly when the patient is an immature minor; (b) the capacity to become pregnant and the capacity for exercising mature judgment concerning the wisdom of an abortion are not logically related; (c) minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences of their actions; (d) parents ordinarily possess information essential to a physician's exercise of his or her best medical judgment concerning a minor child; and (e) parents who are aware that their minor daughter has had an abortion may better ensure that she receives adequate medical attention subsequent to her abortion." (Stats. 1987, ch. 1237, § 1.)

The Attorney General has argued that the medical, emotional and psychological needs of minors who determine to have an abortion are not met under current law and that Assembly Bill No. 2274 furthers the interest of the state in protecting minors from those consequences by ensuring that the minor in fact has capably consented to an abortion or that it is in her best interests where she is incapable of consent.

There is no argument that the protection of minors from physical, psychological and emotional harm manifests a compelling state interest. Plaintiffs, however, filed numerous declarations, reports, surveys and related materials which demonstrated an ability to prove at trial that the minors are well-protected, or even better protected, under current law; i.e., that Assembly Bill No. 2274 will not in fact further the interests at issue.

There was evidence which indicates that all but a very few adolescent minors have the capacity for exercising mature judgment concerning the wisdom of an abortion, and that no abortion is performed on any minor who is not capable of making that decision until a mature, trained adult has determined that it will be in her best interests. There was evidence indicating that minors are well aware of their medical histories and can supply medical personnel with the information to determine the best course of treatment. There was evidence indicating that pregnancy clinics employ well-screened persons who are thoroughly trained in meeting the physical, psychological and emotional needs of minors and that those needs are in fact met before, during and after an abortion. There was evidence that an abortion will not be performed until after a minor has been thoroughly counseled and her pregnancy options completely explained to her. There was evidence that the vast majority of minors who undergo abortions experience no, or very few, detrimental emotional after-effects, that such after-effects as may be experienced usually are the result of sociological factors rather than of the abortion, and that where there are emotional after-effects, counseling is provided.

In addition, there was evidence which indicates that in reducing the ability of a minor to make her own decision in the matter, Assembly Bill No. 2274 will cause increased stress and depression. There was evidence that most minors are very frightened of court proceedings and that such proceedings cause additional stress and anxiety. There was evidence that some minors will choose to undergo illegal abortions rather than reveal the fact of their pregnancies to their parents or to a judge. There was evidence that minors who do not wish their parents to know of their pregnancies usually are correct in their assessment of the negative results that would flow from disclosure. There was evidence that Assembly Bill No. 2274 will cause minors to delay making a choice whether to have an abortion because of the cumbersomeness of the judicial process, because of the difficulty of many minors in obtaining confidential access to the court, and because many simply are reluctant to take any of the options provided by the statute. There was evidence that abortions performed later in pregnancy are attended with increased health risks.

■■■ Since Assembly Bill No. 2274 will severely impair, or totally deny, the exercise of an intimate and fundamental constitutional right, the burden at trial will be upon the People to prove they have a compelling interest in the regulation of unemancipated minors' consent to an abortion. If they establish a compelling state interest in the regulation of this subject, they must also prove that this legislation is the least intrusive alternative available and is so narrowly drawn as to impinge upon the constitutionally protected area no more than is necessary to accomplish the state's

legitimate goals. (See *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 276; *People* v. *Belous, supra,* 71 Cal.2d at p. 964.)

 On the basis of the evidence before the superior court, we cannot say it abused its discretion when it determined that plaintiffs demonstrated a likelihood that this legislation will not protect minors from needless physical, psychological or emotional harm; i.e., that the bill does not in fact further state interests. Having so determined, we need not address the question of whether the plaintiffs demonstrated the likelihood that the state interest involved could be protected by less intrusive legislation.

It also has been pointed out by plaintiffs that Assembly Bill No. 2274 does nothing to further the well-being of minors who choose to carry their pregnancies to term. Plaintiffs argue that no regulation may be enacted on the grounds of furthering a compelling state interest where the regulation arbitrarily distinguishes between two similarly situated groups of persons. They cite *Committee to Defend Reproductive Rights* v. *Myers, supra,* where legislation was passed which prohibited the use of state funds for abortions but permitted the use of funds for care during pregnancy and childbirth. The court reiterated settled law that once the state " 'chooses to enter the constitutionally protected area of choice, it must do so with genuine indifference' " (*id.* at p. 285) and held that where a regulation will unequally affect the fundamental rights of persons, it must meet the three-part test set forth in *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409]: "First, we held that '[the state] must establish that the imposed conditions relate to the purpose of the legislation which confers the benefit or privilege.' (65 Cal.2d at pp. 505-506.) Second, we declared that '[n]ot only must the conditions annexed to the enjoyment of a publicly conferred benefit reasonably tend to further the purpose sought by conferment of that benefit, but also the utility of imposing the conditions must manifestly outweigh any resulting impairment of constitutional rights.' (*Id.,* at p. 506.) Third, and finally, we established that 'in imposing conditions upon the enjoyment of publicly conferred benefits, as in the restriction of constitutional rights by more direct means, the state must establish the unavailability of less offensive alternatives and demonstrate that the conditions are drawn with narrow specificity, restricting the exercise of constitutional rights only to the extent necessary to maintain the integrity of the program which confers the benefits.' (*Id.,* at p. 507.)" (*Committee to Defend Reproductive Rights* v. *Myers,* at pp. 265-266.)

The issue in *Myers,* of course, was public funding. Having determined to fund pregnancy choices, the Legislature could not constitutionally choose to fund only certain choices. The issue in the present case is not funding, but the "benefit" of consent without parental involvement conferred by Civil

Code section 34.5. Whether this legislation will be able to pass the three-part test described in *Bagley* and *Myers* is again largely a factual matter. The court at trial will have to determine if minors who have abortions have needs different from those of minors choosing to carry to term and, if not, whether legislation reasonably can be drafted which does not impermissibly discriminate between classes of minors.

At this point in the proceedings, however, we find only that the plaintiffs provided evidence that the needs of all minors are met under current law and thus the superior court reasonably could have believed that there is a likelihood that the People will not meet their burden of proving at trial that the discrimination inherent in Assembly Bill No. 2274 is justifiable.

*(ii) Preservation of the Parent/Child Relationship*

 The Attorney General contends that Assembly Bill No. 2274 furthers another state interest: the preservation of the parent/child relationship, or the benefit to the child resulting from communication with her parents about her pregnancy.

There was evidence, however, that minors currently are encouraged to consult with their parents, that many in general, and most of the younger minors, do in fact consult with their parents. There was evidence that parental consent statutes do not increase the numbers of minors who consult with their parents; rather the minors choose to undergo the judicial bypass procedure, to take unwanted pregnancies to term, or have illegal abortions. There was evidence that many minors who do not now choose to consult with their parents come from dysfunctional families where the discovery of their pregnancy will only adversely affect the parent/child relationship and may result in harm to the minor. We therefore find no abuse in the trial court's determination that plaintiffs demonstrated a likelihood of proving at trial that Assembly Bill No. 2274 will not further the stated interest.

CONCLUSION

We recognize that Assembly Bill No. 2274 in encouraging, but not requiring, parental disclosure, attempts to balance the arguable rights of parents against the privacy rights of minors. Plaintiffs, however, submitted evidence from which the superior court reasonably concluded that the balance of potential harm favored the issuance of the preliminary injunction and that plaintiffs demonstrated the likelihood that they would prevail at trial. The order issuing the injunction, thus, may not be reversed as an abuse of discretion.

The order is affirmed.

Racanelli, P. J., and Newsom, J., concurred.