[No. D015809. Fourth Dist., Div. One. Aug. 25, 1992.]

ALFRED CARSTEN, Plaintiff and Respondent, v.
CITY OF DEL MAR et al., Defendants and Appellants.

**Counsel**

D. Dwight Worden and Crystal Crawford for Defendants and Appellants.

Brown & Guetz and Burton W. Guetz for Plaintiff and Respondent.

**Opinion**

**KREMER, P. J.**—Defendants City of Del Mar and its council members Elliot Parks, Rod Franklin, Jan McMillan, Gay Hugo-Martinez, and

Jacqueline Winterer (together Del Mar) appeal an order granting plaintiff Alfred Carsten's request for a preliminary injunction barring Del Mar from commencing any work under its Neighborhood Traffic Control Plan (the Plan) involving the construction of "traffic medians, islands, or other barriers" on city streets. Del Mar contends the court erred in applying an incorrect legal standard to the facts before it and in granting a preliminary injunction without finding it was likely Carsten would prevail on the lawsuit's merits. Del Mar also attacks as without substantial evidentiary support the court's finding the relative hardships to the parties warranted injunctive relief. We reverse the order granting the preliminary injunction.

I

FACTS

■ We interpret the facts in the light most favorable to Carsten as the prevailing party in the superior court. (*Gleaves* v. *Waters* (1985) 175 Cal.App.3d 413, 416-417 [220 Cal.Rptr. 621].)

In the summer of 1990, the Del Mar City Council adopted the Plan to slow traffic in the city's residential corridors by installing traffic islands and curbs.

Appearing before the city council in November 1990, Carsten's wife asked for an immediate halt to specified planned street improvements, adequate notification to property owners in the area affected by the proposed improvements, and scheduling of a public workshop on the plans before any further work on the improvements. The council did not act on Carsten's wife's request.

In June 1991 Carsten's wife filed with the Del Mar City Clerk a traffic and pedestrian safety initiative petition signed by enough registered voters for placement on the April 1992 election ballot. The initiative proposed freezing action on the city council's plans to narrow intersections and streets and install structures including raised islands. The city council rejected the petition, declared the initiative illegal and declined to place it on the ballot.[1] The city council also declined to delay action on its Plan.

---

[1] Whether Del Mar should have placed Carsten's initiative on the ballot was the subject of separate litigation.

In July 1991 the city council awarded a construction contract for the proposed road work.

On August 15, 1991, the contractor hired to build the improvements under the Plan notified residents in the affected area work would begin within a few days.

On August 19, 1991, work on the project commenced with marking and saw cutting.

## II

### CARSTEN'S COMPLAINT

On August 21, 1991, Carsten sued Del Mar for allegedly violating Vehicle Code section 21 and Civil Code sections 54 and 54.1.[2] Carsten's unverified complaint sought damages and injunctive and declaratory relief.

Specifically, Carsten's complaint alleged: Del Mar's Plan's "traffic barriers" did not regulate the normal flow and speed of traffic but instead constituted a major inconvenience and safety hazard to most motorists. The proposed traffic islands lacked handicapped access, narrowed city streets causing safety and traffic hazards, detrimentally affected the response of emergency vehicles, and impeded passage by school busses. The proposed traffic islands and barriers were not approved traffic control devices under section 440 and thus Del Mar lacked authority to enforce the Plan.[3] The proposed traffic control devices would prevent full and free use by handicapped persons. Del Mar's commencing construction work under the Plan

---

[2]Vehicle Code section 21 provides: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."

Civil Code section 54 provides: "Blind persons, visually handicapped persons, and other physically disabled persons shall have the same right as the able-bodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places."

Civil Code section 54.1 generally provides disabled persons are entitled to full and equal access to places where the general public is invited.

All statutory references are to the Vehicle Code unless otherwise specified.

[3]Section 440 provides: "An 'official traffic control device' is any sign, signal, marking, or device, consistent with Section 21400, placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, but does not include islands, curbs, traffic barriers, or other roadway design features."

Section 21400 provides the Department of Transportation shall adopt rules and regulations prescribing uniform standards and specifications for all official traffic control devices placed pursuant to the Vehicle Code.

would irreparably injure Carsten by depriving him of his civil and constitutional rights to vote on a traffic control plan and to use the city's streets. Del Mar's expenditure of funds to build the traffic islands and barriers constituted waste and injury to Carsten's rights as a taxpaying Del Mar resident.

## III

### PRELIMINARY INJUNCTION

On August 21, 1991, Carsten filed a request for preliminary injunction prohibiting Del Mar from implementing the Plan or commencing any construction work on the project.

In support of his request for preliminary injunction, Carsten submitted the declaration of traffic engineer Bouman asserting Del Mar's plan called for 11-foot lanes, violating state and national standards. According to Bouman, placement of islands in roadways would create hazardous conditions. Bouman further asserted the proposed roadway obstacles would render it dangerous or impossible for school busses, emergency vehicles, moving vans and other commercial vehicles to negotiate unimpeded turns. Carsten also submitted his and his wife's declarations describing their proposed initiative and their opposition to Del Mar's Plan.

Opposing Carsten's request for preliminary injunction, Del Mar submitted its counsel's and paralegal's declarations attaching photographs of Del Mar streets and construction in progress. According to the paralegal's measurements, the lanes in several existing Del Mar streets were less than 11 feet wide. Del Mar also submitted its city manager's declaration asserting the proposed street improvements constituted a redesigning of certain streets to slow traffic as a result of a proposal by citizens concerned about dangerous high-speed traffic on some of the city's residential roads; the city council authorized the proposed improvements after a lengthy public process; after approving and signing the contract for the proposed work under the Plan, the city council decided not to put Carsten's initiative on the ballot; Del Mar received input from qualified traffic and design consultants; the project did not expose Del Mar to an unreasonable risk of liability; the streets affected by the proposed project would be open to all users equally, including residents, nonresidents, disabled, and nondisabled; Del Mar did not adopt any ordinance or other enactment "regulating" traffic or the use of affected streets in a manner conflicting with state law; the proposal constituted a public works project involving Del Mar's awarding a contract to construct design improvements to affected roadways; an injunction could seriously harm Del Mar financially by exposing the city to damages to the contractor

for delay or contract termination; an injunction might result in the loss of $169,000 in federal urban aid to Del Mar; and an injunction would disrupt Del Mar's normal ongoing street programs.

On August 23, 1991, after hearing argument by counsel, the superior court granted Carsten's request for preliminary injunction. The court restrained Del Mar from "commencing or causing to be commenced, any and all work or construction on the traffic medians, islands, or other barriers on the streets of Del Mar which are the subject of the City of Del Mar Neighborhood Traffic Control Plan." Del Mar appeals.

## IV

## DISCUSSION

## A

## STANDARD OF REVIEW

■ "The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court. [Citations.]" (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) "A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' [Citations]." (*Ibid.*)

An appeal from the granting of a preliminary injunction ordinarily "involves a very limited review of the trial court's exercise of discretion concerning two factors: (1) the likelihood that plaintiffs will ultimately prevail and (2) the interim harm plaintiffs will sustain if the preliminary injunction is denied compared to the interim harm defendant will suffer if the injunction is granted pending a final determination of the merits. [Citations.]" (*Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595 [257 Cal.Rptr. 559].) We must reverse the superior court's order granting the preliminary injunction if we determine either of those two interrelated factors does not support that order. (*American Academy of Pediatrics v. Van de Kamp* (1989) 214 Cal.App.3d 831, 837-838 [263 Cal.Rptr. 46].)

■ The likelihood of the plaintiff ultimately prevailing on the merits of the lawsuit occasionally "depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial. . . . If such a question of pure law is presented, it can sometimes be determinative over the other factor, for example, when the defendant shows that the plaintiff's

interpretation is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits. [Citations.] Even where the question of law is not entirely determinative, it may be appropriate for the appellate court to express its opinion in order to clarify or narrow the issues for trial. [Citation.]" (*Hunter* v. *City of Whittier, supra,* 209 Cal.App.3d at pp. 595-596; see also *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1039-1040 [264 Cal.Rptr. 194]; *American Academy of Pediatrics* v. *Van de Kamp, supra,* 214 Cal.App.3d at p. 838.)

## B

## THE LAW

In *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545 [183 Cal.Rptr. 73, 645 P.2d 124], the Supreme Court affirmed a judgment mandating Berkeley to remove traffic barriers from over 40 streets.[4] The court concluded Berkeley lacked authority to divert traffic by erecting such barriers. Noting vehicular traffic regulation was preempted by the state, the court held Berkeley's barriers could not be justified under its authority to close streets (§ 21101) or its authority to regulate traffic (§ 21100). (31 Cal.3d at p. 548.)[5] The court stated Berkeley's barriers were not authorized as a means of controlling traffic under section 21100, subdivision (d),[6] because the barriers were " 'official traffic control devices' " not conforming to the Department of Transportation's uniform standards and specifications. (31 Cal.3d at p. 554.)[7] The court stated section 21101, subdivision (a),[8] did not permit Berkeley to close a street to through traffic while allowing its use for neighborhood purposes. (31 Cal.3d at pp. 551-552.)

---

[4]For the purpose of shifting traffic from "local" streets to designated "arterials," Berkeley installed barriers consisting of three types of various combinations of concrete posts and redwood boards: "(1) a full barrier spans the width of a street, preventing all through traffic; (2) a diagonal barrier extends diagonally across an intersection, forcing a turn; (3) a semibarrier extends across half a street, preventing through traffic in one direction." (*Rumford* v. *City of Berkeley, supra,* 31 Cal.3d at p. 549.) All streets with barriers were accessible to and used by local traffic. (*Ibid.*) Berkeley's barriers effected "partial closure to certain traffic at certain points." (*Id.* at p. 551.)

[5]Citing section 21, the Supreme Court stated "unless 'expressly provided' by the Legislature, a city has no authority over vehicular traffic control. [Citations.]" (*Rumford* v. *City of Berkeley, supra,* 31 Cal.3d at p. 550.)

[6]Section 21100 provides in part: "Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters: . . . (d) Regulating traffic by means of official traffic control devices meeting the requirements of Section 21400."

[7]After the ruling in *Rumford* v. *City of Berkeley, supra,* 31 Cal.3d 545, the Legislature amended section 440 to provide the statutory definition of "official traffic control device" did not include "islands, curbs, traffic barriers, or other roadway design features."

[8]Section 21101 provides in part: "Local authorities, for those highways under their jurisdiction, may adopt rules and regulations by ordinance or resolution on the following matters: [¶] (a) Closing any highway to vehicular traffic when, in the opinion of the legislative body having jurisdiction, the highway is no longer needed for vehicular traffic."

In *Uhler* v. *City of Encinitas* (1991) 227 Cal.App.3d 795 [278 Cal.Rptr. 157], we concluded Encinitas acted beyond its authority under the Vehicle Code in approving a plan to make a portion of a street one way by building a traffic barrier with curbs across the northbound lane at an intersection. (*Id.* at pp. 799, 806-808.) We held Encinitas's action was not authorized under section 21100, subdivision (d), because the barrier was not an approved traffic control device under section 440. (227 Cal.App.3d at p. 807.) We also held Encinitas's action was not authorized under section 21101, subdivision (f),[9] because Encinitas's action did not constitute the adoption of a "rule" or "regulation." (227 Cal.App.3d at p. 808.)[10] Further, noting the record showed the project was initiated for traffic control rather than for road maintenance, we rejected Encinitas's argument the barrier was authorized under its general construction and maintenance power. (*Id.* at p. 808, citing *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at p. 556.)

## C

### SUPERIOR COURT FINDINGS

In granting Carsten's request for preliminary injunction, the superior court stated: "This is not a matter of cosmetic maintenance or repair. This is a matter of accomplishing a desired end. And that is to control the speed of traffic in a residential area. I don't think there's any question about that." The court also stated: "I don't think it's appropriate to go forward with further construction on this matter until such time as there is finality . . . ." The court further stated: "For the purposes of the record I want it to be made clear that the decision I am about to make is a legal decision as I understand the status of the law as it exists in this district, being binding upon me pursuant to the decision in *Uhler* v. *City of Encinitas* . . . . [¶] And in light of the ambiguities that I believe and perceive that the decision in that case left for me, in light of the comments that I have made concerning the *Rumford* decision and the lack of guidance that that provides, based upon this

---

[9]Section 21101 provides in part: "Local authorities, for those highways under their jurisdiction, may adopt rules and regulations by ordinance or resolution on the following matters: . . . [¶] (f) Prohibiting entry to, or exit from, or both, from any street by means of islands, curbs, traffic barriers, or other roadway design features to implement the circulation element of a general plan . . . ."

[10]In *Uhler* v. *City of Encinitas*, *supra*, 227 Cal.App.3d 795, we reversed the trial court's decision denying the petition for mandate. (*Id.* at pp. 799, 808.) However, although we concluded Encinitas approved and built the traffic barrier without Vehicle Code authorization, we did not instruct the trial court to issue mandate ordering removal of the barrier. (*Ibid.*) Instead, we noted: "Over two years have passed since the City approved the project. If the City has enacted the required 'rules and regulations' [under section 21101, subdivision (f)] in the interim, removal of the barrier would be an unnecessary and expensive act." (227 Cal.App.3d at p. 808.)

particular fact scenario, I am prepared to grant the requested relief on behalf of the plaintiffs in this matter and order that a preliminary injunction as prayed for issue."

The superior court also stated: "And it's the folks that live in the city that are going to have to bear the burden. So I tried to fashion a ruling here that will hopefully give us all more guidance and will hopefully not be unduly financially burdensome on anybody and also will not generate additional litigation . . . against the City on behalf of those contracts."

## D

### ANALYSIS

In issuing the preliminary injunction, the superior court framed its ruling as a decision of law and invited us to clarify what it described as "ambiguities" in case law governing this dispute. The court did not specifically find Carsten would likely prevail on the merits. However, given applicable legal authority, any such implied finding Carsten was likely to prevail would lack adequate factual support even when the evidence is viewed in the light most favorable to Carsten. Also without substantial evidentiary support was the court's finding the balance of relative hardships warranted a preliminary injunction. In sum, the record clearly shows the superior court abused its discretion in granting the injunction.

### 1

### CARSTEN NOT LIKELY TO PREVAIL ON MERITS

Although the improvements proposed by Del Mar were not adopted by ordinance or resolution coming under section 21100, subdivision (d), or under subdivisions (a) or (f) of section 21101, the preliminary injunction was nonetheless unwarranted. Nothing in the record suggested the proposed Del Mar street improvements were barriers amounting to partial street closures of the type disapproved in *Rumford* v. *City of Berkeley, supra,* 31 Cal.3d 545, and *Uhler* v. *City of Encinitas, supra,* 227 Cal.App.3d 795.[11] Instead, the record indicated Del Mar's proposed street improvements— though they might alter traffic patterns—were authorized under the city's broad general powers to construct and maintain streets. (*Rumford* v. *City of Berkeley, supra,* at p. 556.)

---

[11]The superior court acknowledged Del Mar's proposed improvements would not constitute partial street closures.

(a)

■ We distill from case law a distinction between traffic regulation and a city's power to construct and maintain streets with incidental though intended effects on traffic.

As discussed above, in *Rumford* v. *City of Berkeley, supra,* 31 Cal.3d 545, the Supreme Court noted the state has preempted the field of vehicular traffic regulation. (*Id.* at p. 548.) The Supreme Court also noted: "The regulation of traffic on streets is not one of those 'municipal affairs' over which local authorities are given power superior to that of the Legislature. [Citations.]" (*Id.* at p. 550, fn. 3.) A city has no authority over vehicular traffic control unless the Legislature expressly so provides. (*Id.* at p. 550; § 21.) Sections 21100 through 21116 delegate to local governments authority to regulate traffic in their jurisdictions. (*Rumford* v. *City of Berkeley, supra,* at p. 550.) Such delegated power to prescribe traffic rules is "strictly construed." (*Ibid.*)

In *Rumford* v. *City of Berkeley, supra,* 31 Cal.3d 545, the Supreme Court stated: "[T]he statutes and cases distinguish between cities' broad powers to *construct and maintain* streets (e.g., Gov. Code, § 40401, *supra*; Sts. & Hy. Code, § 5101; *Irwin* v. *City of Manhattan Beach* [1966] 65 Cal.2d 13, 22 [51 Cal.Rptr. 881, 415 P.2d 769]; *City of Walnut Creek* v. *Silveira* (1957) 47 Cal.2d 804, 812 [306 P.2d 453] . . .) and their lack of authority to regulate traffic on streets in use, except by authorized 'traffic control devices.' Relatively permanent, physical changes in the width or alignment of roadways that are effected by islands, strips, shoulders, and curbs clearly are within the construction and maintenance power (*Walnut Creek, supra*) though of course they may alter patterns of traffic." (*Rumford* v. *City of Berkeley, supra,* at p. 556, italics in original.)[12]

In *Rumford* v. *City of Berkeley, supra,* 31 Cal.3d 545, the Supreme Court characterized Berkeley's barriers as making "no basic structural changes.

---

[12]Government Code section 40401, subdivision (c), authorizes city governments to pay all or part of the cost of work to "[e]stablish, lay out, alter, keep open, improve, and repair streets, sidewalks, alleys, tunnels, and other public highways, and drain, sprinkle, oil, and light them."

Streets and Highways Code section 5101 authorizes city governments to order "the whole or any portion" of "any . . . streets" to "be improved by or have constructed therein, over, or thereon" any of the following: "(b) The construction or reconstruction of sidewalks [or] curbs . . . . [¶] (o) All other work which may be deemed necessary to improve the whole or any portion of those streets . . . . [¶] [and] (p) All other work auxiliary to any of the above, which may be required to carry out the above."

In *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13 [51 Cal.Rptr. 881, 415 P.2d 769], the plaintiff challenged the city's action permitting property owners to build a pedestrian overpass—connecting their business establishments—spanning a public street owned by the city. The plaintiff alleged the overpass would be built and used as an integral part of the

Like signs and signals they leave existing surfaces in use; their only effect is to control the circumstances of use. They are not part of the street itself; they are rather 'devices . . . placed *upon* a street' [citation] '*for the purpose* of regulating, warning, or guiding traffic' [citation]." (*Id.* at p. 557, italics in original.) Similarly, the traffic barrier in *Uhler* v. *City of Encinitas, supra,* 227 Cal.App.3d 795, was not part of the street itself but instead was a device placed on the street to regulate, warn and guide traffic. Further, the barrier in *Uhler* did not make any basic structural changes, left the existing surfaces in use, and simply controlled the circumstances of use. Unlike the barriers in *Rumford* and *Uhler,* Del Mar's proposed improvements—essentially permanent physical changes in the width and alignment of roadways effected by islands, shoulders and curbs—were not traffic control devices but instead constituted basic structural modifications of the roadways themselves. (*Rumford* v. *City of Berkeley, supra,* at p. 557.) Further, the record contained no evidence suggesting Del Mar's proposed improvements would divert, close or substantially reduce the flow of traffic so as to constitute impermissible "traffic regulation." ▬ Neither did the record show the proposed improvements were anything other than simply a means to enforce already existing speed limits.[13]

---

businesses and would not be available for general pedestrian traffic. The plaintiff also alleged the overpass would limit and interfere with use of the public street. (*Id.* at p. 16.) In affirming the judgment of dismissal after a demurrer was sustained without leave to amend, the Supreme Court cited Government Code section 40401 and Streets and Highways Code section 5101 in concluding: "It is clear that a municipality may itself construct an overpass spanning a public street." (65 Cal.2d at p. 22.)

In *City of Walnut Creek* v. *Silveira* (1957) 47 Cal.2d 804 [306 P.2d 453], the Supreme Court granted a city's petition for mandate compelling the city treasurer to issue bonds under the Limited Obligation Bond Law of 1955. The question before the court was whether that statute was a valid general law under the state Constitution or invalid special legislation. (*Id.* at pp. 807-808.) In concluding the Limited Obligation Bond Law was a valid general law relating to the internal business affairs of a municipality, the Supreme Court stated: "The improvements to be made in the instant case consist of covering Walnut Creek which traverses the business area so that it may be used; to provide new streets, to extend non-through streets, to widen other streets, in order to provide adequately for the greatly increased traffic circulation in the commercial area. There can be no question that the proposed improvements fall within the definition of municipal affairs as that rule is set forth in the decided cases [citations]. It has been held that the term 'street work' includes the building and construction of streets, highways, and boulevards [citations]." (*Id.* at p. 812.)

[13]Carsten contends section 440 bars islands and curbs as traffic regulators. However, section 440 as amended simply excludes "islands, curbs, traffic barriers, or other roadway design features" from the statutory definition of "official traffic control devices" subject to Department of Transportation uniformity requirements. Section 440 was amended by an urgency measure. (Stats. 1982, ch. 749, § 3 p. 2966.) Section 8 of Statutes 1982, chapter 749, page 2968, provides in part: "The recent California Supreme Court decision in *Rumford* v. *City of Berkeley* (S.F. 24239) may make some existing traffic control devices illegal. In order to keep existing traffic control devices operational until a permanent solution is developed, it is necessary that this act take effect immediately." Thus, the statutory amendment was

In sum, although Del Mar's proposed improvements were intended to and might well alter traffic patterns, such improvements were clearly authorized under the city's construction and maintenance power. (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at p. 556, *City of Walnut Creek* v. *Silveira*, *supra*, 47 Cal.2d at p. 812.)

(b)

■■■ Citing Civil Code sections 54 and 54.1 and Health and Safety Code section 19956.5, Carsten contends the preliminary injunction was proper because Del Mar's Plan assertedly did not provide full and equal access to the physically handicapped. However, Carsten did not present competent evidence any proposed improvements under the Plan would violate handicapped access requirements. Instead, Carsten simply submitted his wife's declaration's conclusory assertion she "realized that the proposed plan did not take into account pedestrian or handicapped access to the raised traffic islands . . . ." Further, Health and Safety Code section 19956.5 provides in part: "Any curb or sidewalk intended for public use that is constructed in this state *with private funds* shall conform to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code." (Italics added.) Carsten did not present any evidence the curbs and sidewalks to be built under Del Mar's Plan would be constructed with private funds. Neither did Carsten present evidence such curbs and sidewalks were intended for public use, a requirement for statutory applicability under both Health and Safety Code section 19956.5 and Government Code section 4451, subdivision (a).

In sum, on this record there is little, if any, likelihood Carsten will ultimately prevail on the merits of this litigation.[14]

---

intended to counter the limiting effect of *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d 545, on the ability of local governments to use "islands, curbs, traffic barriers, or other roadway design features" in solving local traffic problems.

[14]We note Carsten's complaint alleged Del Mar's proposed traffic islands would detrimentally affect the response of emergency vehicles and impede passage by school busses. However, the superior court framed its ruling as a decision of law based on its interpretation of *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d 545, and *Uhler* v. *City of Encinitas*, *supra*, 227 Cal.App.3d 795. The court did not base any part of its ruling on the issue of the proposed configurations' effect on emergency vehicles or school busses. Similarly, in seeking affirmance of the preliminary injunction, Carsten's respondent's brief does not rely on that issue. Further, Carsten did not present substantial evidence any proposed improvements under the Plan would adversely affect the operation of emergency vehicles or school busses. Instead, Carsten simply submitted traffic engineer Bouman's declaration's conclusory and grammatically imprecise assertion "the construction of obstacles in the roadway as called for in the plan make it hazardous, if not impossible, for larger vehicles such as school busses, emergency vehicles, moving vans and other commercial vehicles to negotiate turns unimpeded." In

2

BALANCING RELATIVE HARDSHIPS

In assessing the relative hardships to the parties, the superior court assumed a preliminary injunction would be ultimately less costly to Del Mar taxpayers by preventing the need to remove expensive improvements should Carsten prevail on the litigation's merits. However, the court's finding the balance of relative hardships warranted a preliminary injunction was without substantial evidentiary or legal support.[15]

Carsten did not meet his burden to present evidence demonstrating he would be harmed if the preliminary injunction were not granted. (*Casmalia Resources, Ltd.* v. *County of Santa Barbara* (1987) 195 Cal.App.3d 827, 838 [240 Cal.Rptr. 903, 67 A.L.R.4th 809].) Carsten's unverified complaint did not allege any personal irreparable injury resulting from the proposed implementation of Del Mar's Plan. Instead, Carsten essentially alleged Del Mar taxpayers would be harmed by monetary expenditures for the assertedly illegal proposed improvements. (Code Civ. Proc., § 526a.) However, although Carsten's interest as a Del Mar taxpayer might be "sufficient to confer statutory standing to maintain this action and bring it to a final judgment permanently enjoining unlawful expenditures," such interest is not a "substitute for the high degree of existing or threatened injury required for the *prejudgment* injunctive relief sought here." (*Cohen* v. *Board of Supervisors* (1986) 178 Cal.App.3d 447, 454 [225 Cal.Rptr. 114], italics in original.) Further, the record contained undisputed evidence submitted by Del Mar showing issuance of a preliminary injunction would harm the city and its taxpayers by exposing Del Mar to damages to the building contractor for delay or contract termination, jeopardizing the city's entitlement to federal urban aid, and disrupting the city's ongoing street programs.

Finally, the record suggests this lawsuit is the result of a local political controversy and as such is particularly ill-suited to judicial intervention by preliminary injunction. (Cf. *Cohen* v. *Board of Supervisors, supra,* 178 Cal.App.3d at p. 453; *City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 555-557 [79 Cal.Rptr. 168].)

In sum, the superior court should not have issued the preliminary injunction.

---

any event, any evidence bearing on this issue can be presented at trial under the existing pleadings.

[15]In *American Academy of Pediatrics* v. *Van de Kamp, supra,* 214 Cal.App.3d 831, the appellate court stated: "The correct rule is that an injunction should not issue where there is no possibility of success even though its issuance might prevent irreparable harm . . . . Where there is indeed no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only cause needless harm." (*Id.* at p. 838.)

## DISPOSITION

The order granting preliminary injunction is reversed. Defendants are entitled to costs on appeal.

Wiener, J., and Huffman, J., concurred.