## PACIFIC TELEPHONE & TELEGRAPH CO. v. PUBLIC UTILITIES COMMISSION OF CALIFORNIA ET AL.

No. A–101.   Decided August 13, 1979*

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicants request that I continue in effect a temporary injunction issued by the Court of Appeals for the Ninth Circuit on April 2, 1979, pending disposition by the full Court of their petitions for certiorari to review the judgment of the Court of Appeals.   On July 18, that court, in a consolidated case in which both applicants were appellants, affirmed the judgment of the United States District Court for the Northern District of California denying applicants injunctive relief

---

*Together with No. A–102, *General Telephone Co.* v. *Public Utilities Commission of California et al.,* also on application for stay of the same mandate.

against the enforcement of a rate order earlier promulgated by respondent California Public Utility Commission (PUC). The PUC in September 1977 (Decision No. 87838), had ordered applicants to refund charges paid by subscribers before 1978 and to reduce certain of their rates for that and future years. The PUC, however, stayed implementation of its order pending judicial review. 600 F. 2d 1309, 1310 (CA9 1979).

After the Supreme Court of California denied applicants' request for review, applicants petitioned this Court for certiorari. Applicants argued that this Court should review the PUC rate order because it was premised on the PUC's interpretation of an unsettled question of federal tax law. They claimed that if this interpretation subsequently proved incorrect, they would be subject to substantial liability in back taxes. Applicant Pacific Telephone also challenged the PUC's decision on the ground that it violated the Due Process Clause of the Fourteenth Amendment. The petitions were denied on December 11, 1978, 439 U. S. 1052, with MR. JUSTICE MARSHALL and MR. JUSTICE BLACKMUN dissenting from the order of denial. Petitions for rehearing were thereafter denied on February 21, 1979, 440 U. S. 931. On March 14, 1979, the PUC terminated the stay of its own order of September 13, 1977, stating in its order so doing that "the avenues of judicial review have been exhausted." 600 F. 2d, at 1311. The following day, applicants filed a complaint for declaratory and injunctive relief in the United States District Court for the Northern District of California. That court denied relief, but the Court of Appeals granted its own temporary injunction on April 2, 1979, pending consideration of applicants' appeal from the order of the District Court. Last month, as previously noted in this opinion, the Court of Appeals affirmed the judgment of the District Court, dissolved its own injunction, and denied applicants' request for a stay of mandate in order that they might petition this Court for certiorari.

With this sort of procedural history, one would expect

applicants' petitions for certiorari to deal principally with questions arising under the United States Constitution or laws governing the setting of rates by state utility commissions for public utilities. But the questions which applicants seek to have reviewed on certiorari pertain to the application of federal tax statutes as they relate to depreciation which may be claimed by public utilities. Since it is this type of question which applicants seek to litigate if certiorari is granted, one would likewise expect either an agency or officer of the United States having some responsibility for administering these tax statutes to be named as respondents, instead of the California PUC or intervening California municipal corporations. Without dwelling further on the anomalous nature of applicants' petitions for certiorari, I have concluded that their actions in the United States District Court for the Northern District of California begun in March 1979, were simply an effort to relitigate issues which had been determined adversely to them by the administrative and judicial processes of the State of California, and with regard to which this Court denied certiorari and denied rehearing earlier this Term. These denials took place notwithstanding the fact that the Solicitor General urged the Court to grant certiorari and decide the issues presented by the petitions.

The PUC in its Decision No. 90094, rendered on March 14, 1979, after the proceedings in this Court, was doing no more than formally stating that the conditions on which its stay had been granted—exhaustion of judicial review—had occurred, and therefore the stay expired by its own terms. The PUC dissolved this stay despite applicants' contention that the PUC's interpretation of federal tax law in Decision No. 87838 was incorrect and that the rate order would consequently result in the Internal Revenue Service's assessment of substantial tax deficiencies against applicants. In my opinion, the determination of whether or not the PUC's rate order should have been stayed pending resolution of the federal tax issues

was, at this late stage in the proceedings, entirely a matter for the State to decide.

One need not question the assertion of applicants that very large financial stakes hinge on the manner in which the IRS, subject to whatever review of its action is provided by law, treats the refund and rate reduction orders imposed by the PUC's order of September 13, 1977. Nor need one doubt that this Court had jurisdiction, under cases such as *Zacchini* v. *Scripps-Howard Broadcasting Co.,* 433 U. S. 562 (1977), to review applicants' earlier petitions for certiorari in Nos. 78–606 and 78–607, O. T. 1978, on the ground that the PUC had reached a decision based on a misapprehension of federal law which it might not have reached had it correctly understood federal law. But that is now water over the dam. This Court denied those petitions earlier this Term, and denied petitions for rehearing.

If I thought it necessary in passing upon this stay application to determine the present-day correctness of this Court's reading of California law in *Napa Valley Co.* v. *Railroad Comm'n,* 251 U. S. 366 (1920), I would naturally defer to the opinion of the Court of Appeals, which must deal with California law more frequently than does this Court. But I do not actually think it is necessary to make this determination; a State may enunicate policy through an administrative agency, as well as through its courts, and so long as there is an opportunity for judicial review the fact that such review may be denied on a discretionary basis does not make the agency's action any less the voice of the State for purposes of this Court's jurisdiction or for purposes of federal-state comity. See *United States* v. *Utah Construction Co.,* 384 U. S. 394, 419–423 (1966). Nor is this a case where any claim of bias is made against the agency, see *Gibson* v. *Berryhill,* 411 U. S. 564 (1973), or where an action of the federal courts in refusing to allow applicants to relitigate the merits of their claim on which this Court has previously denied certiorari amounted

to the imposition of a requirement of "exhaustion of administrative remedies." Here, the administrative action was the source of the claimed wrong, not a possible avenue for its redress.

The net of it is that I believe applicants' federal-court litigation is new wine in old bottles. When it was new wine in new bottles, last Term, this Court denied certiorari, and I have no reason to believe that any intervening events would change that outcome. Accordingly, without considering the second part of the requirement which applicants must meet in order to obtain a stay—the so-called "stay equities"—the temporary stay which I previously issued is dissolved forthwith, and applicants' request for a stay of the mandate of the Court of Appeals for the Ninth Circuit is hereby

*Denied.*