**NATIONAL CENTER FOR YOUTH LAW, Plaintiff,**

v.

**LEGAL SERVICES CORPORATION and Terrance J. Wear, Defendants.**

**No. C–90–0383 DLJ.**

United States District Court,
N.D. California.

Sept. 10, 1990.

Jack W. Londen and Samantha J. Smith of Morrison & Foerster, and John F. O'Toole, Counsel for the Natl. Center for Youth Law, San Francisco, for plaintiff.

Hugh J. Cadden of Barger & Wolen and Timothy Shea, Gen. Counsel for the Legal Services Corp., San Francisco, for defendants.

### ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

JENSEN, District Judge.

On July 11, 1990, the Court cross-motions for summary judgment in this action. Appearing for plaintiff were Jack W. Londen and Samantha J. Smith of Morrison & Foerster and John F. O'Toole, counsel for the National Center for Youth Law. Appearing for defendants were Hugh J. Cadden of Barger & Wolen and Timothy Shea, general counsel for the Legal Services Corporation.

Upon consideration of the submissions of the parties, the argument of counsel and the applicable law, the Court finds that defendants have violated the statutory mandate of the Legal Services Corporation,

and therefore GRANTS summary judgment for plaintiff.

### I. BACKGROUND

This action seeks declaratory relief and damages to restore to plaintiff federal funds cut by defendant following a determination that plaintiff was not in compliance with federal law.

Defendant Legal Services Corporation ("LSC") is a federally chartered private non-profit corporation established by Congress under the Legal Services Corporation Act of 1974, 42 U.S.C. § 2996 *et seq.* ("LSC Act"), to administer grants to legal service programs and national support centers which give legal assistance to the indigent. Plaintiff National Center for Youth Law ("NCYL") is a private non-profit corporation based in California which has been an eligible recipient of LSC funds since 1978.

Once funded, LSC grant recipients are entitled to refunding in subsequent years unless they are "afforded reasonable notice and opportunity for a timely, full, and fair hearing ...". 42 U.S.C. § 2996j. LSC regulations identify four grounds for denial of refunding: (1) denials required by implementation of new law or regulations as applied to a certain class of recipients; (2) "significant failure" by a recipient to comply with statutory or regulatory requirements; (3) "significant failure" by a recipient to provide economical and effective legal assistance; or (4) determination by LSC that another organization could better serve eligible clients in the recipient's service area. 45 C.F.R. § 1625.3.

In 1989 LSC determined that plaintiff was in violation of statutory conditions on funding and reduced NCYL's 1990 grant by 9.95% without holding the hearing required by statute.[1] LSC determined that,

---

1. LSC argues that the amount of the sanction is de minimis so as to avoid the statutory notice and hearing requirements. While it is true that LSC regulations define a "denial of refunding" as a reduction from the prior year's funding of 10% or more, 45 C.F.R. § 1625.2(b), LSC concedes that the sole purpose of the 9.95% reduction was to sanction a perceived violation of rules for LSC recipients and not a reduction

required by a change in the law or in LSC's annual appropriation. Letter from Terrance J. Wear, President, LSC, to John Francis O'Toole, Executive Director, NCYL at 7 (Dec. 27, 1989); *cf.* 45 C.F.R. § 1625.2. As noted below, LSC actions taken for a stated purpose relating to the Corporation's enabling legislation are subject to review by the district courts to ascertain whether the action was arbitrary and capricious or

by participating in litigation challenging a newly-adopted California law requiring parental consent for a minor to obtain an abortion, NCYL had violated the LSC Act's statutory prohibition on use of LSC or other funds by recipients to support availability of abortion.

NCYL's participation in the lawsuit, *American Academy of Pediatrics v. Van de Camp* ("*AAP*"), was funded not by its LSC grant, but by a grant from the California Legal Services Trust Fund ("state Trust") of the California State Bar, which was established by California statute to provide grants to programs providing civil legal services to indigent persons. Cal. Bus. & Prof.Code §§ 6210–6228 (West 1990). While the LSC Act bars use by LSC recipients even of non-LSC funds to promote abortion availability, LSC Act § 1010(c), 42 U.S.C. § 2996i(c), the Act provides a safe harbor for such use of "public funds" expended for the purpose for which they are provided. *Id.* LSC concedes that this safe harbor on its face permits an LSC funding recipient to use state funds for litigation supporting abortion availability, even though such expenditure is prohibited under the federal Act. LSC further concedes that the state Trust funds are public funds as contemplated under § 1010(c). However, LSC determined that pursuant to the state Trust regulations and guidelines, the *AAP* funds were not used for the purpose for which they were provided, because no indigent persons were directly represented in the litigation. LSC therefore demanded that NCYL withdraw from the *AAP* litigation.

NCYL responded to the demand by requesting a determination from the Legal Services Trust Fund Commission ("state Commission"), which administers the state Trust for the State Bar, as to whether its participation in *AAP* was a purpose for which its state Trust grant was provided. After accepting written submissions from both NCYL and LSC, the state Commission determined that *AAP* was "being litigated primarily in the interest of, and for the benefit of indigent persons, and that expenditures in the case constitute a permissible use of NCYL's Trust Fund Program grant in accordance with the purposes for which such funds are provided." Legal Service Trust Fund Commission, Minutes (Mar. 31, 1989).

LSC refused to accept the state Commission's ruling, however, and made its own independent review of California law, including the state Trust's regulations and guidelines. On this basis LSC decided that the state Commission was in error and that NCYL was not using the state Trust funds for the purpose for which they were provided. Therefore, LSC determined that NCYL's participation in the *AAP* litigation fell outside the § 1010(c) safe harbor, and the 9.95% funding sanction was imposed without affording NCYL notice and an opportunity for hearing.

The parties agree that the only issues in this litigation are issues of law and that summary judgment is the most appropriate means of determining the merits of this action. Therefore, the parties have filed cross-motions for summary judgment, and LSC has submitted its administrative record. Two national organizations supporting LSC recipients have also filed a joint amicus brief in support of plaintiff. The parties further agree that LSC's finding was based on an interpretation of state law contrary to the state Commission's own; and that the 9.95% sanction was imposed on NCYL for cause, based on LSC's determination that NCYL participated in the *AAP* litigation in violation of the LSC Act, notwithstanding the safe harbor provision for receipt and use of public funds.[2]

## II. DISCUSSION

### A. *Review of the Funding Sanction*

■ LSC was established by Congress to "provide high quality legal assistance to

---

was supported by substantial evidence. *Spokane City Legal Serv. v. Legal Serv. Corp.,* 614 F.2d 662 (9th Cir.1980).

2. LSC has also moved to strike several portions of plaintiff's submitted declarations and portions of the amicus brief on grounds of lack of relevance and conclusory statements. Because the content of these declarations is not material to the Court's disposition of these actions, these motions to strike are denied.

those who would be otherwise unable to afford adequate legal counsel." LSC Act § 1001, 42 U.S.C. § 2996(2). Toward this end, the Legal Services Corporation was created under the act to administer grants of financial support for legal assistance to the indigent in non-criminal matters. 42 U.S.C. § 2996b(a). While LSC is not a federal agency whose actions are subject to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, the Court has subject matter jurisdiction to construe its governing statute in a declaratory relief action, and the Court may set aside LSC decisions which are arbitrary and capricious or are not based on substantial evidence. *Spokane City Legal Serv. v. Legal Serv. Corp.*, 614 F.2d 662 (9th Cir.1980); *Nat'l Senior Citizens Law Center v. Legal Serv. Corp.*, 581 F.Supp. 1362, 1371 (D.C.D.C. 1984), *aff'd*, 751 F.2d 1391 (D.C.Cir.1985).

The LSC Act has an express policy that "the legal services program ... be kept free from the influence of or use by it of political pressures." 42 U.S.C. § 2996(5). In accordance with this policy, the Act mandates federal neutrality on certain issues, including abortion, by prohibiting use of LSC funds "to provide legal assistance with respect to any proceeding or litigation" regarding abortion availability. LSC Act § 1007(b)(8), 42 U.S.C. § 2996f(b)(8).

The Act also bars use of *non-Federal* funds for any purpose prohibited under the Act. LSC Act § 1010(c), 42 U.S.C. § 2996i(c). However, § 1010(c) offers a safe harbor for an LSC recipient to also receive "public funds" and use them for the purposes for which the public funding agency provided them. *Id.* Thus qualification for the safe harbor results from a two-step determination: first, that the funds expended for the prohibited purpose were "public;" and second, that the funds were expended for the purpose for which they were provided, in accordance with state law. LSC itself determined, and therefore does not dispute, that the funds received from the state Trust were public. Letter from Terrance J. Wear, President, LSC, to John Francis O'Toole, Executive Director, NCYL at 1 (Feb. 23, 1989).

■ LSC concedes that the purpose for which state public funds are provided is determined by reference to state law; its own independent determination of eligibility for the state funds of NCYL's participation in the *AAP* litigation was made by reference to California regulations and the state Commission's own guidelines. Therefore, the primary issue before the Court is whether LSC may review de novo a state agency's determination of eligibility for a state legal services grant program and supplant the state's decision with its own.

Absent express Congressional authority to do so, it may not. *Pacific Telephone & Telegraph Co. v. Public Utilities Comm'n*, 443 U.S. 1301, 1304, 100 S.Ct. 1, 3, 61 L.Ed.2d 880 (1979). LSC claims a power of review over the state Commission's action comparable to a federal court's review of a state trial court on an issue of constitutional dimensions—i.e., granting deference to findings of fact and reviewing conclusions of law or mixed questions of law and fact de novo. However, LSC fails to acknowledge that, like the federal courts, it obtains such power only through a constitutional or Congressional mandate.

Although LSC is correct that Congress enacted its enabling and governing statute under a proper exercise of the Congressional constitutional taxing and spending power, nothing in the LSC Act extends to LSC the full extent of the Congressional spending power. Furthermore, although LSC asserts that it retains "broad residual powers ... to make policy and administrative decisions," LSC Brief at 15, a plain reading of the LSC Act reveals a precise enumeration of the Corporation's powers and duties. *E.g.*, 42 U.S.C. § 2996e(a)–(b) (authorizing LSC to provide financial assistance in accordance with the Act, to promulgate regulations regarding compliance and to insure compliance by recipients). Significantly, the LSC Act contains no clause which may be read as granting "residual" powers.

Absent from LSC's enumerated powers is the power to review state agency determinations of eligibility for state legal assistance grant programs; nor does any regulation promulgated under the Act attempt

the broad reach which LSC now asks this Court to recognize. Furthermore, LSC is prohibited under its enabling Act from interfering with grants of state legal assistance funds to LSC recipients, no matter the purpose of such a grant. 42 U.S.C. § 2996i(c).

As there is no "residual" power in the statute permitting LSC to review state determinations of authorized expenditures of state funds, the Court must look to this provision itself for any such power of review. The face of § 1010(c) is silent as to which agency determines the proper purpose for use of public funds, stating in pertinent part: "[T]his provision shall not be construed to prevent recipients from receiving other public funds ... and expending them in accordance with the purposes for which they are provided ...". 42 U.S.C. § 2996i(c). The legislative history is similarly silent, as the "public funds exemption" was a product of conference compromise between the House and the Senate. *See* 120 Cong.Rec. 14729, 14731 (May 15, 1974) (statements of House sponsor and conference committee member Rep. Quie that without the exemption governmental units would find it impossible to participate in or make contribution to legal service activities).

Unless a statute provides a clear indication by Congress "that it envisioned federal superintendence of ... decisions traditionally entrusted to state governance," the limitations of the federal system are properly read into the LSC Act. *See Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 106 S.Ct. 2101, 2121, 90 L.Ed.2d 584 (1986). State retention of power not clearly preempted or delegated by Congress is presumed—"though not repeatedly recited"—in Congressional enactments. *Id.* (quoting *United States v. Gambling Devices,* 346 U.S. 441, 450, 74 S.Ct. 190, 195, 98 L.Ed. 179 (1953)); *see also id.* at n. 33 (citing an extensive line of authority supporting the proposition that courts should be reluctant

to presume Congressional preemption of state authority where Congress has not expressed an intent to do so).

The LSC Act contains no language on its face, and LSC has identified no Congressional authority, which would overcome the Court's proper reluctance to endorse a federal agency's de novo review of a sister state agency's determination under its own rules and regulations. Therefore, the Court finds that neither LSC nor itself may review and reverse the state Commission's determination that NCYL used the funds provided it for the purpose for which they were intended.

**B. NCYL's Proper Use of State Funds**

■ The state Trust fund was established under California statutes, which vest the power to determine eligibility for funding of any applicant the California State Bar. Cal.Bus. & Prof.Code § 6224 (West 1990). A provision parallel to those in the LSC Act vests the power to promulgate regulations and insure compliance in the State Bar and its delegate, the state Commission. *Id.* §§ 6224–6225. The state Commission speaks with the voice of the state for purposes of federal-state comity. *Pacific Telephone & Telegraph Co. v. Public Utilities Comm'n,* 443 U.S. 1301, 1304, 100 S.Ct. 1, 3, 61 L.Ed.2d 880 (1979).

Where state power has not been expressly preempted by Congress, LSC is bound, as is this Court, by the state Commission's interpretation of state law, finding that involvement in the *AAP* litigation was a purpose for which NCYL's grant was provided. In view of LSC concession that the funds used were public funds, NCYL's use of the state funds was within the safe harbor of § 1010(c), and LSC violated its governing statute by imposing the funding sanction.[3]

■ In the alternative, however, the Court finds that the state Commission's decision was in accord with its own rules

---

**3.** While a sanction of less than 10% may be viewed as discretionary with LSC—i.e., that LSC could reduce a recipient's funding by 9.95% for no reason at all—here it is conceded that the sole purpose of the funding reduction was to

sanction NCYL's activities undertaken with state funds after NCYL refused to withdraw from the state litigation. As discussed below, that *purpose* is a clear violation of the LSC Act and is therefore impermissible.

and regulations. The state Trust fund's purpose is required to distribute its funds for the provision of legal services to indigent persons. Cal.Bus. & Prof.Code § 6216. The state program does not contain a prohibition on legal service activities involving abortion availability as does the LSC Act. *Cf.* Cal.Bus. & Prof.Code § 6223 (generally prohibited are activities which generate fees; provision of legal assistance in criminal proceedings; and provision of legal services to non-indigent persons).

In applying to the state Trust Fund for funding, applicants agree "to restrict their use of funds allocated from the Trust Fund Program to matters directly related to the needs of legal services clients," i.e., the indigent population of California. Legal Services Trust Fund Program, *Guidelines for Attorneys; Statute and Regulating Rules*, Rule 4.3. To be eligible for a state Trust grant, an applicant organization's activities must be primarily for the benefit of indigent persons. Legal Services Trust Fund Program, *Trust Fund Program Eligibility Guidelines*, Guideline 2.3.3 ("Guidelines"). Applicants may qualify for state Trust funding by providing special services, including legal representation "on matters of specialized substantive law important to special client groups." Guideline 2.6.3.

LSC does not dispute that the abortion availability issues addressed in the *AAP* litigation are a matter of substantive law important to NCYL's special client group, i.e., indigent minors. NCYL's involvement in the *AAP* litigation was to support *pro bono* counsel representing the named plaintiffs in the litigation, the American Academy of Pediatrics, who brought the suit asserting their minor patients' constitutional rights. LSC argues that these activities were per se unqualified uses of state Trust monies, because no minors subject to the challenged legislation were named plaintiffs.

However, the sole issue in the litigation was the constitutionality of newly-enacted California legislation, A.B. 2274, which would require a minor to obtain her parent's consent before obtaining an abortion. The constitutional question was whether the law impermissibly interfered with a *minor's* right to privacy in choosing to have an abortion; not with the right of the named plaintiff's members to be free from misdemeanor prosecution under an invalid law. *American Academy of Pediatrics v. Van de Kamp*, 214 Cal.App.3d 831, 842–45, 263 Cal.Rptr. 46 (1989). In considering the interests intruded on by the legislation, the California Court of Appeals noted, "The right to privacy, *including the right to choose to have an abortion*, may not be intruded upon absent a compelling state interest …". *Id.* at 843, 263 Cal.Rptr. 46 (emphasis added). Significantly, there was no claim before the state court that *AAP* lacked standing to assert this privacy interest, although it did not claim any desire on the part of its members to choose to have an abortion.

Thus it is clear that the interests being contested in the state court were primarily those of NCYL's client base, indigent minors, balanced against the state's interest in protecting those minors. *See id.* at 845–48, 263 Cal.Rptr. 46. There is no question that the decision in that litigation had a direct bearing on the ability of NCYL's clients to exercise their constitutional rights: "The right to procreative choice in California is protected by article I, section 1 of our [California] Constitution and extends to all women regardless of wealth [citation] or age [citation]." *Id.* at 836, 263 Cal.Rptr. 46. Therefore, were the Court empowered to review the state Commission's determination that the *AAP* litigation was conducted "primarily in the interest of, and for the benefit of, indigent persons," it would conclude that there is substantial evidence in view of state law and the Commission's own rules, to support that decision.

By contrast, there is no evidence to support LSC's position, aside from the mere caption of the state lawsuit which, names no minor. Therefore, the Court finds that LSC's conceded basis for reducing NCYL's is without a rational basis and must be set aside. Summary judgment in this action is therefore GRANTED for plaintiff.

### C. *Appropriate Remedy*

The Complaint requests declaratory and injunctive relief and damages, specifically:

1. A declaration that the LSC Act does not authorize LSC to reduce a recipient's funding "based solely on LSC's determination that the responsible state agency improperly approved the recipient's use of state funds."

2. A declaration that NCYL did not violate the LSC Act by using state funds to participate in the *AAP* litigation.

3. A declaration that LSC funding appropriation must be maintained at the same level from 1989 to 1990 under the Omnibus Reconciliation Act of 1989 (Pub.L. No. 101–162 § 608, 103 Stat. 1032 (1989)).

4. A declaration that LSC's funding reduction violated plaintiff's right to free expression as guaranteed by the First Amendment to the United States Constitution.

5. For damages in the amount of the total funding reduction for 1990, with interest.

6. An injunction barring LSC from further refunding reductions based upon review of state agency legal service funding decisions.

7. Attorneys' fees and costs to the full extent authorized by law.

As discussed above, the Court has hereby set aside the LSC's decision to reduce NCYL's 1990 funding as that decision was arbitrary and unsupported by substantial evidence. Furthermore, the Court has found that, inasmuch as NCYL's use of state Trust funds for the *AAP* litigation was proper under § 1010(c) of the LSC Act, LSC's reduction of funding was taken in violation of the LSC Act's express protection for use of non-Federal public funds. Because the Court finds that this decision disposes of the case on its merits, no declaratory relief on LSC's general funding decision practices or the effect of those practices on recipients' First Amendment Rights will be granted. In addition, the injunctive relief requested is speculative as to any other funding reduction decisions which LSC may now or in the future make with regard to NCYL or other grantees.

The Court does find that plaintiff is entitled to the full contractual amount of its 1990 grant, without reduction for the invalid 9.95% sanction. As plaintiff has cited no basis on which a grant of attorneys' fees is justified in this case, the Court grants leave to file further a request for attorneys' fees in this action to provide such a basis, if any.

### III. CONCLUSION

For the reasons stated above, the Court finds that LSC violated the clear purpose of the LSC Act not to interfere with state funding of legal assistance funds, and hereby sets aside the 9.95% funding sanction, GRANTING summary judgment for plaintiff.

Plaintiff is ordered to file a form of judgment consistent with this Order within 20 days, and to serve a copy of such proposed judgment upon defendants. Defendants shall have an additional 14 days to review the proposed judgment and file comments, if any, with the Court.

IT IS SO ORDERED.