[No. B168030. Second Dist., Div. Five. Nov. 30, 2004.]

UNIWILL L.P., Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

538

COUNSEL

Richard Laskin for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Jeri L. Burge, Assistant City Attorney, and Ingrid M. Causey, Deputy City Attorney, for Defendant and Respondent City of Los Angeles.

Richard D. Arko for Defendant and Respondent Southern California Edison Company.

OPINION

**ARMSTRONG, J.**—Uniwill L.P. appeals the dismissal of its lawsuit for inverse condemnation after the successful demurrer of defendant City of Los Angeles (the City) and the subsequent judgment on the pleadings entered in favor of Southern California Edison Company (Edison). The trial court ruled that Uniwill's complaint was a challenge to the conditions of a tract map (Tract Map) which, pursuant to Government Code section 66499.37, was required to be filed within 90 days of imposition of the challenged conditions. The court also ruled that the complaint failed to state a cause of action for inverse condemnation against Edison. We determine that the court erred in both findings, and so reverse the judgment.

## FACTS

Uniwill is the owner of a parcel of real property near downtown Los Angeles. Wishing to develop a shopping center on the property, Uniwill applied to the City Advisory Agency for a tentative Tract Map (Tentative Tract Map) in August 1999. The Advisory Agency issued Tentative Tract Map No. 52972 on December 20, 1999, approving construction of Uniwill's project subject to certain conditions. Based on that approval, Uniwill obtained the necessary building permits, arranged construction financing, and commenced construction of the project, valued at between $20 and $30 million.

Pursuant to the provisions of Government Code section 66499.37,[1] Uniwill had 90 days after issuance of the Tentative Tract Map to challenge any

---

[1] That section provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations . . . ." (Gov. Code, § 66499.37.)

condition contained therein by filing a petition for writ of mandate. Uniwill was satisfied with the conditions of the Tract Map, and so did not file a writ petition.

When the construction was well underway (grading and underground excavations were complete, rough plumbing and utilities had been installed, and foundations for major structures had been erected, which work together represented approximately 20 to 25 percent of the work to be done on the project), and after Uniwill had expended some $6.5 million, the City and Edison informed Uniwill that the City would not certify to the Advisory Agency that Uniwill had complied with the conditions of the Tentative Tract Map unless and until Uniwill conveyed to Edison an easement for a fiber-optic communications cable (valued at $35,000 to $40,000), completed certain trenching work (costing approximately $220,000), and paid a fee ($79,570). Because Uniwill was then incurring interest costs alone of $3,300 per day and had executed leases which required it to complete construction and deliver occupancy to the lessees on a certain timetable, Uniwill determined that it was economically unfeasible to stop the project and commence litigation to vindicate its rights. Consequently, Uniwill complied with the City's "unlawful exaction" under protest and, after completing the project, filed suit in inverse condemnation.

The City demurred to the complaint. However, rather than admit the allegations of the complaint for purposes of the demurrer, the City contradicted the allegations of the complaint. It requested that the trial court take judicial notice of the Tentative Tract Map, which it contended contained the Edison easement. Specifically, the City cited condition S-1(c) of Tentative Tract Map No. 52972 as the condition which Uniwill was required to challenge by petition for writ of mandate. That condition reads: "That satisfactory arrangements be made with both the Water System and the Power System of the Department of Water and Power with respect to water mains, fire hydrants, service connections and public utility easements." The City also pointed to the notes to Tentative Tract Map No. 52972, which provide: "Satisfactory arrangements shall be made with the Los Angeles Department of Water and Power, Power System, to pay for removal, relocation, replacement or adjustment of power facilities due to this development. The subdivider must make arrangements for the underground installation of all new

utility lines in conformance with Section 17.05N of the Los Angeles Municipal Code."[2]

■ The City further argued that, even if the condition did not appear in the Tentative Tract Map, the 90-day statute of limitations contained in Government Code section 66499.37 expired whether it began to run upon issuance of the Tentative Tract Map (December 1999), the date the City notified Uniwill of the requirement (May 2000), the date Uniwill granted the easement to Edison (October 2000), or the date of issuance of the Final Tract Map (February 2001). Plaintiff claims that these dates are irrelevant because this is an inverse condemnation action with a five-year statute of limitations. (*Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 775 [16 Cal.Rptr.3d 404, 94 P.3d 538] [five-year statute of limitations for action "arising out of the title to real property" applies to inverse condemnation action based on a physical taking]; Code Civ. Proc., § 319; see also Code Civ. Proc., § 318 [five-year limitation for "action for the recovery of real property"].)

In its order on demurrer to the original complaint, the trial court rejected the City's argument that the condition appeared in the Tentative Tract Map: "There is nothing alleged in the Complaint that work occurred was part of a planning/administrative process." This conclusion is well-supported by the record. The utility easement language of the Tentative Tract Map speaks only of easements to the Department of Water and Power (not to Edison) for relocation of existing easements (not for granting new easements) with respect to water and power facilities (not for fiber-optic communications cables) "due to this development" (not for the benefit of property other than that under development). Thus, the trial court properly concluded that the

---

[2] Los Angeles Municipal Code section 17.05N provides: "N. Installation of Utilities. Utility lines, including but not limited to those required for electricity, communication, street lighting and cable television services necessary for the general use of the lot owners in the subdivision, shall be installed or guaranteed to be installed in the same manner as other required improvements. [¶] In all portions of a tract map area classified in the A, R or C Zones, all such utility lines shall be installed underground, provided, however, that incidental, appurtenant equipment such as transformers, terminal boxes and meter cabinets may be placed above ground but shall conform with regard to placement and height with those standards adopted by the Commission as it determines are necessary to safeguard the public against hazards created by said equipment and to further the purposes of this article. The Subdivision Committee shall make its report and recommendation to the Commission prior to the adoption of said standards. (Amended by Ord. No. 146,985, eff. 4/11/75.) [¶] The subdivider shall make the necessary Cost and other arrangements for such underground installation and for relocation of existing facilities with each of the persons, firms or corporations furnishing utility services involved." (Added by Ord. No. 131,820, eff. Mar. 28, 1966.)

City was not entitled to judgment based on its primary argument that the Edison easement was contained in the Tentative Tract Map.

The trial court nevertheless rejected plaintiff's claim that the complaint was timely filed and ruled in the City's favor, finding that "the statute of limitations commenced on May 10, 2000. Pursuant to Government Code § 66499.37, any challenge to any condition imposed on a Parcel Map must be raised within 90 days of the date that the condition is imposed. [¶] The complaint herein was filed on August 26, 2002. It is unclear from the pleadings whether the claims were properly brought within 90 days prior to August 26, 2002. Leave to amend is therefore warranted."

Uniwill filed a first amended complaint, again alleging that the condition of which it complained *was not* a condition of the Tentative Tract Map and, for that very reason, *could not be* a condition for issuance of the final Tract Map (Final Tract Map). Since it was not imposed as part of the permitting process, but was simply coerced in an informal but highly effective manner after Uniwill had obtained all of the permits necessary to complete its project, it was not "the decision of an advisory agency" which could only be challenged in a mandamus proceeding pursuant to Government Code section 66499.37. Rather, it was a physical taking of property subject to a five-year limitations period.

The City again demurred. The trial court ruled that, pursuant to Government Code section 66499.37, Uniwill was required to commence an action or proceeding within 90 days after May 10, 2000, when it learned of the City's demand that Uniwill grant the Edison easement, and that its failure to do so barred the action. Thus, notwithstanding the fact that the court agreed with Uniwill that the Edison easement was not a condition of the Tentative Tract Map, the court apparently concluded that the easement was at least a de facto condition of the Final Tract Map, and therefore had to be challenged, if at all, within 90 days of imposition of the condition.

Uniwill timely appeals the court's ruling.

## DISCUSSION

First, there is no dispute regarding the general rule applicable to permit conditions which a landowner claims constitute a taking of property. That rule states that when a governmental agency conditions its approval of a project on the grant of an easement, payment of a fee, or any other exaction which would otherwise constitute a taking requiring compensation, the

property owner must challenge the condition by petition for writ of mandate before (or simultaneously with) filing a lawsuit for inverse condemnation. Or, put another way, "a landowner who accepts and complies with the conditions of a building permit cannot later sue the issuing public entity for inverse condemnation for the cost of compliance. [Citations.] Instead, the property owner is generally limited to having the condition invalidated by a proceeding for writ of mandate." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 941 [218 Cal.Rptr. 839].)

There are multiple rationales for this rule: "[T]he legislative body assesses the desirability of a program on the assumption that compensation will not be required to achieve the objectives of that ordinance. Determining that a particular land-use control requires compensation is an appropriate function of the judiciary, whose function includes protection of individuals against excesses of government. But it seems a usurpation of legislative power for a court to force compensation. Invalidation, rather than forced compensation, would seem to be the more expedient means of remedying legislative excesses." (*Agins v. City of Tiburon* (1979) 24 Cal.3d 266, 276 [157 Cal.Rptr. 372], reversed on another point in *First English Evangelical Lutheran Church v. County of Los Angeles County* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378].) Moreover, "meaningful governmental fiscal planning would be impossible and legislative control over appropriations emasculated if persons were permitted to simply stand by in the face of administrative action claimed to be unlawful and injurious and years later assert substantial monetary damages." (*Air Quality Products, Inc. v. State of California* (1979) 96 Cal.App.3d 340, 352 [157 Cal.Rptr. 791].) "Thus the rule a landowner seek to invalidate the condition by writ of mandate rather than seek compensation by inverse condemnation is designed to avoid forcing an unwanted taking of property by the public entity and concomitant burden of compensation when the landowner has previously accepted conditions and benefits of development." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist., supra*, 172 Cal.App.3d at p. 941.)

 Defendant frames Uniwill's complaint as a challenge to the conditions of a permit, that is, a claim falling under the general rule. However, it is the allegations of the complaint, and not defendants' interpretation of them, that must control in ruling on a demurrer. Uniwill alleged that the City's demand that it grant Edison an easement, which demand was made after the Tentative Tract Map had been approved and substantial work on the project had been completed, was not a requirement imposed by the Advisory Agency as a condition for the grant of permission to develop the property. Rather, it

was merely a threat, uttered by a City representative with the power (although not the authority) to deprive Uniwill of what it was legally entitled to, issuance of a Final Tract Map and a certificate of occupancy upon completion of the project in conformity with the governmental approvals already issued.

■ The City cites no case in support of its contention that a threat issued by an agent of the City under the circumstances described above which results in the taking of private property must be challenged in an action or proceeding filed within 90 days of the threat. Because it is the City's burden on demurrer to establish that Uniwill cannot prevail at trial, the demurrer should have been overruled.

Moreover, the City's additional argument that "the complaint fails to state an inverse condemnation claim because Uniwill has not alleged that it has been denied all economically viable uses of the property" lacks merit. *Agins v. Tiburon* (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138] (zoning ordinance), *First English Evangelical Lutheran Church v. County of Los Angeles, supra,* 482 U.S. 304 (ordinance prohibiting construction in interim flood protection area), and the other cases relied on by the City concerned property owners who sought compensation for the diminution in the value of their property following the adoption of a land use regulation or the designation of their property for future development. Simply put, those cases have no similarity to the facts before us. Contrary to the City's argument, plaintiff has indeed been denied all economic use of the property subject to Edison's easement, since Edison now has the exclusive right to occupy that property. Likewise, Uniwill has been denied all use of the money which it was forced to expend to complete the trenching work and to pay the fee for the easement.

Consequently, we reverse the judgment of dismissal in favor of the City. Taking the allegations of the complaint as true, this action was filed within five years after the date of the alleged taking, whether that time be measured from the date that the City demanded the easement or the date the easement was granted, the trenching was completed and the fee paid.

■ Edison's judgment on the pleadings must also be reversed. A privately owned public utility, such as Edison, may be liable in inverse condemnation when it jointly participates with a public entity in depriving a person of property rights. (*Breidert v. Southern Pacific Co.* (1964) 61 Cal.2d 659, 662 [39 Cal.Rptr. 903, 394 P.2d 719]; see also *Barham v. Southern Cal. Edison Co.* (1999) 74 Cal.App.4th 744, 751 [88 Cal.Rptr.2d 424]; *Jones v.*

*People ex rel. Dept. of Transportation* (1978) 22 Cal.3d 144 [148 Cal.Rptr. 640, 583 P.2d 165]; *Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903 [91 Cal.Rptr. 139].) These are precisely the allegations of the complaint. The complaint thus states a cause of action against Edison.

■ Moreover, the allegations of the complaint include facts which may state a cause of action against Edison for rescission and restitution for economic duress. (See, e.g., *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154 [204 Cal.Rptr. 86]; *Leeper v. Beltrami* (1959) 53 Cal.2d 195 [1 Cal.Rptr. 12, 347 P.2d 12].) Under this theory, wrongful acts will support a claim of economic duress when "a reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." (*Rich & Whillock, Inc. v. Ashton Development, Inc., supra*, 157 Cal.App.3d at p. 1159 [defendant withheld contractual payment in bad faith and coerced plaintiff into signing an agreement for a final compromise payment and release]; *Leeper v. Beltrami, supra*, 53 Cal.2d at p. 204 [defendants falsely clouded title to plaintiff's property, leaving plaintiff with no reasonable alternative but to comply with defendants' demands for payment of an already paid debt and transfer of real property].)

Edison argues that the economic duress theory does not apply to it because it did not wrongfully cloud title to Uniwill's property nor assert a knowingly false claim against Uniwill, and "Uniwill had options available to it" other than succumbing to Edison's wrongful demand, such as filing a petition for writ of mandate and/or attempting to have the Advisory Agency grant the Final Tract Map despite the City's threat. Edison misses the import of the economic duress cases. In those cases, the plaintiffs, like Uniwill here, could have initiated a lawsuit. However, that option was not economically viable. So too, here, Uniwill's claim is not that it could not file a petition for writ of mandate or seek a Final Tract Map without complying with the illicit condition, but that those options were not economically reasonable, and that, indeed, that is the very reason that the City and Edison demanded them: to coerce property rights from Uniwill to which defendants were not entitled but had the power to extract under duress.

In sum, because the complaint alleged facts which could state a cause of action other than that pled, it was error to enter judgment in favor of Edison when leave to amend the complaint could have cured the pleading defect.

## DISPOSITION

The judgment is reversed. Uniwill is to recover its costs on appeal.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied December 22, 2004, and respondents' petition for review by the Supreme Court was denied February 16, 2005. Moreno, J., was of the opinion that the petition should be granted.