[No. A131279. First Dist., Div. Four. Dec. 15, 2011.]

VICTOR AIUTO et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendants and Appellants.

[No. A132908. First Dist., Div. Four. Dec. 15, 2011.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
VICTOR AIUTO et al., Real Parties in Interest.

COUNSEL

Dennis J. Herrera, City Attorney, Kristen A. Jensen, Thomas S. Lakritz and Victoria Wong, Assistant City Attorneys, for Peitioner and for Defendants and Appellants.

Timken Johnson Hwang, Heidi A. Timken, Leslie A. Johnson and Abram P. Petersen for Plaintiffs and Respondents and for Real Parties in Interest.

OPINION

RUVOLO, P. J.—

## I.

## INTRODUCTION

Plaintiffs are owners of condominium units that are designated "Below Market Rate" (BMR units), and thus subject to restrictions imposed by the Below Market Rate Condominium Conversion Program (BMR Program) created by the City and County of San Francisco (the City), under authority of the state Subdivision Map Act (Gov. Code, § 66410 et seq.) (SMA).[1] Plaintiffs filed this lawsuit against the City[2] challenging ordinance No. 320-08 (the Ordinance) adopted by the City in December 2008 as part of its BMR Program. In their facial challenge, plaintiffs claim the Ordinance, which amended existing ordinances governing the BMR Program and added new provisions, constituted a regulatory taking, was preempted by state law, and violated their civil rights under 42 United States Code section 1983.

In this interlocutory appeal, the City claims the court erred in issuing a preliminary injunction to maintain the status quo while plaintiffs' claims were being litigated. Among other arguments, the City claims that plaintiffs did not have a reasonable probability of prevailing at the trial—one of the requirements for issuing a preliminary injunction—because all of plaintiffs' causes of action were time-barred. We agree with the City that section 66499.37, the statute of limitations governing any subdivision-related decision under the SMA, required plaintiffs' facial challenge to the Ordinance to be filed within 90 days of the enactment of the Ordinance. Because plaintiffs' claims were not filed within the 90-day timeframe, plaintiffs have not shown a likelihood

---

[1] All undesignated statutory references are to the Government Code.

[2] The City is sued along with the Mayor's Office of Housing, former Mayor Gavin Newsom, and the San Francisco Board of Supervisors.

of success on the merits. For this reason, we reverse the preliminary injunction, and remand the case to the trial court for further proceedings.

## II.

## FACTS AND PROCEDURAL HISTORY

The SMA is "the primary regulatory control" governing the subdivision of real property in California. (*Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 445 [94 Cal.Rptr.2d 901].) Condominium projects are expressly defined as subdivisions within the meaning of the SMA. (§ 66424.) The SMA vests the "[r]egulation and control of the design and improvement of subdivisions" in the legislative bodies of local governments which must promulgate ordinances on the subject. (§ 66411.) Under the SMA, local governments possess the powers necessary to set condominium conversion restrictions. (See *Soderling v. City of Santa Monica* (1983) 142 Cal.App.3d 501, 507–508 [191 Cal.Rptr. 140].)

Pursuant to the City's authority under the SMA, the City established its BMR Program in 1979 to expand "opportunities for homeownership while preserving and expanding the supply of low- and moderate-income housing." (S.F. Ord. No. 320-08, adding § 1344 to S.F. Subd. Code.) The City created the BMR Program by adopting sections 1341 and 1385 of the City's Subdivision Code, which, among other things, required property owners seeking to convert their apartments into condominiums to set aside a certain number of their units for the BMR program. The purpose of conditioning approval of subdivision maps in this way was to restrict the sales and rental prices of each affected unit to ensure the affected units would remain available for purchase by low- to moderate-income households. The affordable housing restrictions were then reflected as conditions set forth in the San Francisco Planning Commission's subdivision map approvals. The program restrictions were, in turn, reflected on each property's subdivision map.

In 2008, a dispute arose between the City and several owners of BMR units regarding the terms of the BMR Program, including whether the program's restrictions lasted in perpetuity, or for only 20 years. In response, on December 19, 2008, the City adopted the Ordinance at the center of this controversy, which amended sections 1341 and 1385 and added a new section 1344 to the City's Subdivision Code.

New section 1344 of the City's Subdivision Code states that it applies to "BMR Units purchased or acquired on or after the effective date of this ordinance," and retroactively to "BMR Units purchased or acquired before the effective date of this ordinance." (S.F. Subd. Code, § 1344, subd. (a)(1),

(2).) The amendment clarifies the City's intent that the requirements of the BMR Program apply in perpetuity.

In addition, the Ordinance (1) sets out procedures for calculating the sale price for BMR units and the procedures unit owners must follow to sell their units (S.F. Subd. Code, § 1344, subds. (c), (e)); (2) specifies how the City adds costs for capital improvements to the base resale price of the units (*id.*, subd. (d)); (3) establishes rental restrictions (*id.*, subd. (f)); and (4) allows certain unit owners to pay a fee to have their units released from the BMR Program, so long as they make such election "24 months from the effective date of this legislation" (*id.*, subd. (i)). Section 1344, former subdivision (i)(a) of the City's Subdivision Code also requires that in order to have a unit released from the BMR Program, "the BMR Unit Owner must waive all claims against the City for damages or other alleged injury arising from the Owner's participation in the Program."

Throughout this litigation, the parties have taken vastly different views of the purpose and effect of the Ordinance. The City claims the Ordinance "was enacted to further the planning goals of the SMA by clarifying conditions placed on the subdivision of [plaintiffs'] properties and by creating new options for Program participants who wish to exit the program or sell their units . . . ." In plaintiffs' view, "[i]n 2008, after years of the City's mismanagement and the exit of nearly half of the BMR Units from the Program, the City . . . attempted to unilaterally rewrite the terms of the program and subject Plaintiffs to permanent resale, rental and inheritance restrictions."

On May 13, 2009, *five months* after the City adopted the Ordinance, plaintiffs filed a complaint in federal district court challenging both the City's adoption of the Ordinance, and the City's alleged mismanagement of the BMR Program. (*Aiuto v. San Francisco's Mayor's Office of Housing* (N.D.Cal., No. C 09-2093 CW).) In the federal case, plaintiffs asserted claims for the unlawful taking of their property, preemption under state law, declaratory relief, injunctive relief, and violations of their due process, equal protection, and civil rights.

On October 22, 2009, the City filed a motion to dismiss the federal action. Ultimately, the federal court dismissed all of plaintiffs' claims, but granted leave to amend their claim under 42 United States Code section 1983. Plaintiffs did not attempt to amend their federal pleadings. Instead, on August 6, 2010, *three months* after their federal case was dismissed, plaintiffs filed the underlying complaint in the San Francisco Superior Court alleging three causes of action for (1) regulatory taking, (2) state law preemption by the Costa-Hawkins Rental Housing Act legislation (Civ. Code, § 1954.50 et seq.)

and unspecified sections of the SMA and the Probate Code, and (3) a claim for violation of plaintiffs' civil rights under 42 United States Code section 1983. As described by plaintiffs, the "crux" of their complaint is that the City has "unilaterally rewritten the terms and operation of an affordable housing program in such a way as to unlawfully strip homeowners' [*sic*] of their constitutionally protected property rights." The complaint's prayer for relief seeks "a permanent injunction preventing the enforcement of the Ordinance," and declaratory relief adjudging the Ordinance unconstitutional "on its face and/or as applied to Plaintiffs."[3]

On September 10, 2010, plaintiffs filed a motion for preliminary injunction. In their motion, plaintiffs sought an injunction in case their challenge to the Ordinance failed, and in order to preserve their option of having their units released from the BMR Program in exchange for a fee and a waiver of rights. Specifically, plaintiffs requested the court "to extend the deadline referenced in the San Francisco Subdivision Code, Section 1344(i), as added by Ordinance No. 320-08, from '24 months from the effective date of [Ordinance No. 320-08]' to ninety (90) days after final judgment in this case."

Ordinarily, trial courts "evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]" (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70 [196 Cal.Rptr. 715, 672 P.2d 121].)

In claiming there was no likelihood plaintiffs could prevail at trial, the City contended that plaintiffs' claims were all barred by the 90-day statute of limitations period provided by section 66499.37 (actions challenging the decision of a legislative body "concerning a subdivision") and section 65009, subdivision (c)(1) (actions challenging either the adoption or amendment of a zoning ordinance or the validity of conditions attached to variances, conditional use permits, or other permits). The City argued that plaintiffs' claims were governed by both sections 66499.37 and 65009: "[W]hen the City adopts an ordinance under its authority pursuant to the [SMA], or when there is a challenge to conditions imposed by the City on subdivisions, or when the

---

[3] As Division Five of this appellate district recently pointed out, "[t]he mere inclusion of the words 'as applied' in the prayer for relief is not determinative," and "we may examine the allegations of the pleadings and the relief requested to ascertain the nature" of a plaintiff's claims. (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1326, fn. 11 [118 Cal.Rptr.3d 915].) So viewed, it is obvious that plaintiffs have presented a facial challenge to the Ordinance as they themselves acknowledge in briefing the statute of limitations issue. Indeed, plaintiffs admit that "[t]o date, defendants have made no reviewable 'decision' to apply [the] Ordinance . . . to any specific property."

City takes actions which relate to or concern subdivisions, those actions are governed by [section] 66499.37. Moreover, whenever the City adopts a land use ordinance, any facial challenge to such an ordinance must be brought within 90 days whether or not it's a subdivision ordinance pursuant to [section] 65009 . . . ." It is undisputed that plaintiffs failed to file suit within the 90-day limitations period specified in both statutes.

In opposition, plaintiffs argued that sections 65009 and 66499.37 were wholly inapplicable because plaintiffs' claims could not be fit "into the statutory rules set up for development decisions." Instead, their challenge was to the City's adoption "of an ordinance which unilaterally changes the terms of a low income housing program." Consequently, plaintiffs insisted their claims were governed by the five-year statute of limitations for inverse condemnation claims, including regulatory takings (Code Civ. Proc., §§ 318, 319); the three-year statute of limitations for preemption claims (Code Civ. Proc., § 338, subd. (a)); and the two-year personal injury statute of limitations for 42 United States Code section 1983 claims (Code Civ. Proc., § 335.1; see *Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1323–1324 [269 Cal.Rptr. 877] [state and federal courts alike have consistently held that the personal injury statute of limitations applies to civil rights causes of action]).

In ruling on plaintiffs' motion for preliminary injunction, the trial court concluded that plaintiffs had met their burden of showing a reasonable probability of success on the merits. The trial court also found that the balance of harm weighed in plaintiffs' favor. On January 7, 2011, after considering further briefing and hearing oral argument from each side, the court determined that neither the statute of limitations found in section 66499.37 nor section 65009 applied to the claims set forth in plaintiffs' complaint. Therefore, the court concluded "this action is not subject to a 90-day statute of limitations." On January 18, 2011, the court entered its order granting plaintiffs' motion for preliminary injunction.

Thereafter, the City sought review of the court's statute of limitations ruling by a direct appeal from the order granting plaintiffs' motion for preliminary injunction (No. A131279) and by filing a petition for writ of mandate, prohibition, certiorari, or other appropriate relief (No. A132908). "Where, however, as here, there is a right to an immediate review by appeal, that remedy is almost as speedy as a writ proceeding, under present practice, and should be considered adequate unless petitioner can show some special reason why it is rendered inadequate by the particular circumstances of his case. [Citation.]" (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951], fn. omitted.) In this case, the City has an adequate remedy at law in its appeal. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113 [40

Cal.Rptr.2d 839, 893 P.2d 1160] [a remedy by immediate direct appeal is presumed to be adequate]; *Attorney General v. Superior Court* (1953) 41 Cal.2d 249, 251 [259 P.2d 1] [writ not appropriate remedy where appeal provides adequate remedy].) Consequently, the City's writ petition will be denied as plaintiffs have not shown entitlement to review by extraordinary writ.

## III.

## DISCUSSION

### A. *Overview*

In seeking reversal of the trial court's order granting the preliminary injunction, the City relies on the well-established principle that a preliminary injunction granted without a showing of a likelihood of success on the merits is an abuse of discretion and will be reversed. (See *Perez v. Hastings College* (1996) 45 Cal.App.4th 453, 457 [53 Cal.Rptr.2d 1] [reversing preliminary injunction because respondent could not show a likelihood of success on the merits].) Among other arguments, the City insists that plaintiffs could not possibly prevail at trial because all of their causes of action are time-barred under the 90-day statute of limitations found in sections 66499.37 and 65009.

Plaintiffs contend the court's ruling on the applicability of the statute of limitations to plaintiffs' claims is not at issue in this appeal. They assert that we should only reach the question "whether the Trial Court abused its discretion in issuing the injunction" because plaintiffs "can challenge the statute of limitations decision on appeal from a final ruling." We disagree. When the likelihood of prevailing on the merits depends on a question of law, such as construing the applicable statute of limitations, an appellate court can independently determine whether the trial court's interpretation was correct as a matter of law and, therefore, whether there was a possibility of success on the merits. (See *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094–1095 [271 Cal.Rptr. 44]; *Legacy Group v. City of Wasco* (2003) 106 Cal.App.4th 1305, 1311 [131 Cal.Rptr.2d 460] (*Legacy Group*) [applicability of statute of limitations presents question of statutory interpretation subject to de novo review].) Moreover, even where the question of law is not entirely determinative of the likelihood of plaintiffs' success on the merits, " 'it may be appropriate for the appellate court to express its opinion in order to clarify or narrow the issues for trial. [Citation.]' [Citations.]" (*Carsten v. City of Del Mar* (1992) 8 Cal.App.4th 1642, 1650 [11 Cal.Rptr.2d 252].)

B. *The SMA Statute of Limitations, Section 66499.37, Bars Plaintiffs' Claims*

 The Subdivision Map Act establishes a strict 90-day limitations period for any action or proceeding to attack a governmental decision "concerning a subdivision . . . or to determine the reasonableness, legality, or validity of any condition attached thereto . . . ."[4] (§ 66499.37.) In addition, to further expedite resolution of subdivision-related challenges, section 66499.37 provides calendar preference for covered actions: "The proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain, forcible entry, and unlawful detainer proceedings." (§ 66499.37.)[5]

In the trial court's written order finding plaintiffs' claims were not subject to the 90-day limitations period of section 66499.37,[6] the court concluded that the phrase "concerning a subdivision" as used in section 66499.37 referred to subdivision-related decisions "that have a temporal aspect to them" such as "the formulation of subdivision plans, to approve or disapprove tentative and final maps for such plans, and . . . participa[tion] in the administration of subdivision planning." Apparently, the trial court believed section 66499.37 would only apply if plaintiffs were seeking to challenge the affordable housing conditions originally imposed as part of the subdivision process when plaintiffs' apartment buildings were being subdivided into condominiums. So interpreted, the court concluded "[t]his case concerns activities which lie outside the purview of Section 66499.37" because plaintiffs' "challenges do not concern any 'decision' made by Defendants that justifies a short limitations period or relates to an ongoing project and would affect future components of the project . . . ."

 In interpreting statutes, such as section 66499.37, the words used in the statute are the starting point. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].) On its face, the statutory language at issue, applying the 90-day statute of limitations to "[a]ny action or proceeding" challenging "the decision of an advisory agency, appeal board,

---

[4] The text of section 66499.37 reads: "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision."

[5] Pursuant to section 66499.37, the City filed a motion for calendar preference, which we granted on August 25, 2011.

[6] We take judicial notice of the court's written statement of decision, which was issued after the City filed its appeal in this matter. (Evid. Code, §§ 451, subd. (a), 452, subd. (d).)

or legislative body concerning a subdivision" is very broad and does not contain the temporal limitation relied upon by the trial court to find that plaintiffs' lawsuit was timely. To the contrary, the language used in section 66499.37 contains no limitation whatsoever on the type of decision that is being challenged, but instead broadly encompasses any decision of a local legislative or advisory body "concerning a subdivision."

■ Moreover, the 90-day limitations period of section 66499.37 is expressly made applicable to any action "to determine the reasonableness, legality, or validity" of any subdivision condition "*including, but not limited to, the approval of a tentative map or final map* . . . ." (Italics added.) The italicized language was added by a 2007 amendment. (Stats. 2007, ch. 612, § 9.) According to the analysis prepared for the Senate Judiciary Committee, Assembly Bill No. 763 (2007–2008 Reg. Sess.) "clarif[ies] that the 90-day time limitation to attack, review, set aside, void, or annul the decision of a legislative body concerning a subdivision applies to, but is not limited to, the approval of a tentative map or final map." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 763 (2007–2008 Reg. Sess.) as amended May 31, 2007, p. 4 [proposed amendment].) We think it is evident that the Legislature, in adopting the 2007 amendment, intended to apply the 90-day statute of limitations in a more expansive manner to actions seeking to attack or review any decision "concerning a subdivision," and not just to "subdivision decisions and ordinances directly affecting current subdivision approvals," as plaintiffs claim.

■ Our interpretation of section 66499.37 is also guided by our Supreme Court's seminal decision in *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*). *Hensler* arose from the City of Glendale's adoption of an ordinance, enacted pursuant to the SMA, prohibiting construction of residential units along the visible upper ridge area of the subject property. (8 Cal.4th at p. 8.) Instead of challenging the adoption of the ordinance, Hensler developed his land in accordance with the ordinance, then filed an *inverse condemnation action* against the city for money damages asserting a regulatory taking because he could not develop certain sections of his property as planned. Hensler claimed that section 66499.37 did not apply to his lawsuit because he was not attacking the validity of the land use ordinance, but was merely seeking money damages for the taking of his property. Our Supreme Court disagreed, finding that the short limitations period of section 66499.37 applied to "a claim that a land-use ordinance or regulation enacted under the authority of the Subdivision Map Act, or administrative actions taken pursuant to such an ordinance or regulation, has had the effect of 'taking' the plaintiff's property without compensation . . . ." (*Hensler, supra*, at pp. 24–25.)

 The *Hensler* court explained that "[t]he legislative intent is clear. Section 66499.37 was enacted to ensure that *any* challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly." (*Hensler, supra,* 8 Cal.4th at p. 7, italics added.) The court pointed out that every appellate decision which had considered the issue in a case involving a controversy related to a subdivision had held that section 66499.37 was applicable no matter what the form of the action. (*Hensler, supra,* at pp. 26–27.) The key factor was that in each of these cases, whatever wrong was claimed in the complaint or whatever relief was sought, the gravamen of the complaint was an attack on a subdivision-related decision under the SMA. (*Hensler, supra,* at p. 23; see also *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665, 671–672 [282 Cal.Rptr. 564] [90-day statute applies to any subdivision-related decision regardless of label attached to the action].)

Many courts have applied these principles to a wide variety of controversies. (See, e.g., *Trinity Park, L.P. v. City of Sunnyvale* (2011) 193 Cal.App.4th 1014, 1044–1045 [124 Cal.Rptr.3d 26] [§ 66499.37 applied to a subdivision developer's challenge to city's requirement that the subdivision developer would have to sell a percentage of houses at below market prices as a condition of development approval]; *Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 124, fn. 4 [130 Cal.Rptr.2d 517] (*Sprague*) [§ 66499.37 barred causes of action asserting "violation of federal civil rights"];[7] *Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, 905 [35 Cal.Rptr.3d 199] [§ 66499.37 barred action alleging that ordinance requiring additional fees and surveys was preempted by SMA]; *McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1264–1265 [93 Cal.Rptr.2d 725] [§ 66499.37 applied to city's grant of a conditional use permit allowing developer of a condominium project to exceed city's building height restriction]; *Timberidge Enterprises, supra,* 86 Cal.App.3d at pp. 885–886 [§ 66499.37 applied to developers' challenge to a condition placed upon the approval of a tentative subdivision map that developers pay school impact fees]; *Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 754–756 [85 Cal.Rptr.3d 695] (*Friends of Riverside's Hills*) [§ 66499.37

---

[7] Plaintiffs direct our attention to *Wal-Mart Stores, Inc. v. City of Turlock* (E.D.Cal. 2006) 483 F.Supp.2d 987, as supporting the proposition that claims under 42 United States Code section 1983 are not subject to the section 66499.37 limitations period. Preliminarily, we note that this court is not bound by federal decisions in matters involving state law. (*Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52 [83 Cal.Rptr.2d 590].) Considering "even a constitutional right is subject to reasonable statutory periods of limitation within which to commence an action for its vindication," we think *Sprague* has more persuasive force. (*Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606] (*Timberidge Enterprises*).)

applied to cause of action under California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) that concerned a subdivision].)

■ The court in *Friends of Riverside's Hills, supra*, 168 Cal.App.4th 743, summarized the unifying factor in this diverse body of law as follows: "The key factor in each of the cases is that the action attacked or sought review of a decision of a local legislative or advisory body relating to a subdivision under the SMA." (*Id.* at p. 751.) Although plaintiffs insist their challenge relates solely to the City "changing the terms of the operation of a housing program long after the relevant land use approvals were given," the undisputed fact remains that plaintiffs seek to set aside an ordinance enacted by the City under its authority to regulate condominium conversions pursuant to the SMA. (§ 66411.) As our Supreme Court has directed, "if this is a claim arising out of application of a land-use regulation authorized by [the SMA], section 66499.37 applies." (*Hensler, supra*, 8 Cal.4th at p. 23.)[8]

In the face of this overwhelming authority, plaintiffs claim there is no case applying section 66499.37 in a situation such as this one, that "has nothing to do with those original land use control[s]," and instead involves "changing the terms of the operation of a housing program long after the relevant land use approvals were given." We direct plaintiffs' attention to the case of *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253 [86 Cal.Rptr.3d 598] (*Arcadia*). In *Arcadia*, the owner of an undeveloped 69-acre parcel filed a complaint and petition for writ of mandate against the City of Morgan Hill, challenging a 10-year extension of a growth control ordinance that drastically restricted development, including restrictions on the property owner's ability to subdivide the property. The trial court concluded the action was untimely, even though the property owner filed it within the 90-day timeframe, ruling that the property owner should have challenged the initial growth control ordinance passed by the voters in 1990. The Court of Appeal reversed, agreeing with the property owner that the extension of the density restriction for an additional 10 years imposed a new burden on the property owner, triggering a new 90-day period under section 66499.37 for bringing an action. (169 Cal.App.4th at p. 268.)

■ Like the property owner in *Arcadia*, plaintiffs seek to set aside the City's decision to adopt an ordinance, pursuant to its authority under the SMA, which plaintiffs claim "retroactively changed" the conditions placed on

---

[8] None of the cases relied upon by plaintiffs involve the legality of an ordinance adopted pursuant to the SMA. In fact, each case involved a dispute unrelated to the subdivision process as governed by the SMA. (See *Legacy Group, supra*, 106 Cal.App.4th at pp. 1312–1313 [breach of contractual agreement unrelated to the SMA]; *Donohue v. Santa Paula West Mobile Home Park* (1996) 47 Cal.App.4th 1168, 1172–1173 [55 Cal.Rptr.2d 282] [property never subdivided]; *Uniwill v. City of Los Angeles* (2004) 124 Cal.App.4th 537, 544 [21 Cal.Rptr.3d 464] [threat to deprive Uniwill of final tract map].)

the original subdivision of their properties. In *Arcadia*, the appellate court did not conclude that the property owner was foreclosed from challenging the changes made to the growth control ordinance because the owner did not challenge, within the 90-day limitations period, the city's original enactment of the ordinance placing restrictions on his ability to subdivide. Instead, the court concluded that the statute of limitations began to run anew because the subsequent reenactment and extension of those restrictions imposed a new burden on the property owner. By analogy, the action taken by the City in adopting the Ordinance, which amended two sections imposing conditions on the original subdivision of plaintiffs' properties (§§ 1341 and 1385 of the S.F. Subd. Code) and added a new section (§ 1344 of the S.F. Subd. Code), allegedly imposed new restrictions and conditions on plaintiffs' properties. The adoption of the Ordinance therefore triggered the 90-day time period prescribed by section 66499.37, which plaintiffs did not meet.

 In sum, a fair reading of the language used in section 66499.37, and the cases interpreting it, simply do not support the limitation on its language placed there by the trial court that only subdivision-related decisions "that have a temporal aspect to them" such as "decisions made during the formulation, approval and administration of subdivision plans" are governed by the short limitations period. "The rule of narrowly interpreting statutes of limitation [citation] does not apply when the statute is unambiguous and reflects a policy judgment by the Legislature [citation] as here in Government Code section 66499.37 that litigation involving the Subdivision Map Act must be resolved as quickly as possible consistent with due process. [Citation.]" (*Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102, 1109–1110 [85 Cal.Rptr.2d 639].)

Additionally, we believe the adoption of a requirement that subdivision-related decisions must "have a temporal aspect to them" in order to trigger the 90-day time limitation period of section 66499.37 would destabilize what is currently a very predictable and consistent area of the law. Future claimants and local land use authorities would be left to guess what time periods courts would apply to hundreds of subdivision-related decisions arguably subject to section 66499.37. As was explained in *Hensler, supra,* 8 Cal.4th at page 27, "[t]he purpose of statutes and rules which . . . create relatively short limitation periods for" actions which attack land use decisions "is to permit and promote sound fiscal planning by state and local governmental entities." This purpose would be subverted if we created different rules for different "types" of subdivision-related decisions and allowed facial challenges to some ordinances to be brought years after the challenged actions were taken. Consistent with the need for expeditious resolution of subdivision-related challenges, we conclude the 90-day litigation limitation period prescribed by section 66499.37 applies to plaintiffs' facial claims that the Ordinance

constituted a regulatory taking, was preempted by state law, and violated their civil rights under 42 United States Code section 1983.[9]

#### D. Because All of Plaintiffs' Claims Were Governed by Section 66499.37, a Preliminary Injunction Should Not Have Been Granted

■ A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff will ultimately prevail on the merits of the claim. (See *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) "Where there is . . . no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only *cause* needless harm." (*American Academy of Pediatrics v. Van de Kamp* (1989) 214 Cal.App.3d 831, 838 [263 Cal.Rptr. 46], italics added). The application of these principles to the present case requires the reversal of the trial court's order granting plaintiffs' motion for preliminary injunction. Plaintiffs have failed to show a likelihood of success on the merits of their underlying claims against the City because all of their causes of action were time-barred by the 90-day statute of limitations prescribed by section 66499.37.

■ Having found section 66499.37 applicable, the City urges us to dismiss plaintiffs' lawsuit. The City's request for dismissal includes new causes of action alleged in plaintiffs' first amended complaint, filed by plaintiffs on June 23, 2011, while this appeal was pending, and of which we take judicial notice.[10] (Evid. Code, § 452, subd. (d).) We decline the City's request because the only matter before us in this appeal is the propriety of the preliminary injunction as supported by plaintiffs' original complaint. As our Supreme Court has instructed, "Our review . . . is limited to the propriety of the preliminary relief granted to plaintiffs. . . . The record before us discloses no subsequent proceedings in the trial court. . . . In determining the propriety of preliminary relief, neither the trial court nor an appellate court may undertake a final adjudication of the lawsuit. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 [90 Cal.Rptr.2d 236, 987 P.2d 705], fn. omitted.)

---

[9] Given our conclusion that the 90-day statute of limitations provided by section 66499.37 renders plaintiffs' facial challenge to the Ordinance untimely, we need not address the City's claim that the 90-day statute of limitations provided by section 65009, governing planning and zoning decisions, also applies to bar plaintiffs' claims.

[10] Plaintiffs' first amended complaint alleges numerous new causes of action, including claims alleging inadequate recording of the restrictions on real property, cancellation of written instrument, restraint on alienation, and violation of the rule against perpetuities.

## IV.

## DISPOSITION

The order granting the preliminary injunction is reversed. The City's petition for writ of mandate, prohibition, certiorari or other appropriate relief is denied. The matter is remanded for further proceedings in the trial court consistent with this opinion. Costs on appeal are awarded to the City.

Reardon, J., and Rivera, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied March 21, 2012, S199624.